E-Filing

1    <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

2    Name  <u>Arroyo</u>          <u>Artemio</u>          <u>M.</u>
           (Last)              (First)              (Initial)              **FILED**

3
     Prisoner Number  <u>C 20149</u>
4                                                                   JUL 1 9 2007

5    Institutional Address  <u>P.O. BOX 689-BW-221</u>
                                                          RICHARD W. WIEKING
     <u>Soledad, Ca. 93960</u>                            CLERK, U.S. DISTRICT COURT
                                                          NORTHERN DISTRICT OF CALIFORNIA
6

7                        **UNITED STATES DISTRICT COURT**
                         **NORTHERN DISTRICT OF CALIFORNIA**

8    <u>Artemio Arroyo</u>                              )
     (Enter the full name of plaintiff in this action.)  )    C 07    3718
9                                                        )
                          vs.                            )
10                                                       )    Case No. _____
     <u>Ben Curry, Warden</u>                           )    (To be provided by the clerk of court)    SBA
11   _____                  )
                                                         )    **PETITION FOR A WRIT**
12   _____                  )    **OF HABEAS CORPUS**    (PR)
                                                         )
13   _____                  )
                                                         )
14   _____                  )
     (Enter the full name of respondent(s) or jailor in this action)  )

15

16                        <u>Read Comments Carefully Before Filling In</u>

17   <u>When and Where to File</u>

18          You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23          If you are challenging your conviction or sentence and you were **not** convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1  **Who to Name as Respondent**

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  **A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE**

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14      <u>SUPERIOR COURT OF SAN JOAQUIN COUNTY (Stockton California)</u>

15                 Court                              Location

16          (b)    Case number, if known <u>30688</u>

17          (c)    Date and terms of sentence <u>June 24, 1980, 15-years to life</u>

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                 parole or probation, etc.)          Yes <u>xx</u>      No <u>_____</u>

20                 Where?

21                 Name of Institution: <u>Correctional Training Facility (Soledad)</u>

22                 Address: <u>P.O.BOX 686, Soledad, Ca. 93960</u>

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  <u>Second degree murder offense. Penal Code § 187</u>

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS          - 2 -

3.  Did you have any of the following?

        Arraignment:                                Yes _____      No _____

        Preliminary Hearing:                  Yes _____      No _____

        Motion to Suppress:                  Yes _____      No _____

4.  How did you plead?

        Guilty _X___    Not Guilty _____    Nolo Contendere _____

        Any other plea (specify) _____

5.  If you went to trial, what kind of trial did you have?

        Jury _____      Judge alone_____    Judge alone on a transcript _____

6.  Did you testify at your trial?                    Yes _____      No _____

7.  Did you have an attorney at the following proceedings:

        (a)      Arraignment                  Yes _____      No _____

        (b)      Preliminary hearing          Yes _____      No _____

        (c)      Time of plea                Yes _X___      No _____

        (d)      Trial                      Yes _____      No _____

        (e)      Sentencing                 Yes _x___      No _____

        (f)      Appeal                  Yes _____      No _____

        (g)      Other post-conviction proceeding    Yes _____      No _____

8.  Did you appeal your conviction?            Yes _____      No _____

        (a)      If you did, to what court(s) did you appeal?

                    Court of Appeal              Yes _____      No _____

                    Year: _____      Result:_____

                    Supreme Court of California      Yes _____      No _____

                    Year: _____      Result:_____

                    Any other court              Yes _____      No _____

                    Year: _____      Result:_____

        (b)      If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS      - 3 -

1      petition?                                              Yes _____     No_____

2          (c)    Was there an opinion?                        Yes _____     No_____

3          (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                              Yes _____     No_____

5                 If you did, give the name of the court and the result:

6                 _____

7                 _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?          Yes _X_      No_____

10          [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition.  You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

15  U.S.C. §§ 2244(b).]

16          (a)    If you sought relief in any proceeding other than an appeal, answer the following

17                 questions for each proceeding.  Attach extra paper if you need more space.

18          I.     Name of Court: San Joaquin County Superior Court.

19                 Type of Proceeding: Habeas Corpus Petition.

20                 Grounds raised (Be brief but specific):

21                 a. No evidence support the findings of the Board.

22                 b. The Board has breached the plea bargain.

23                 c. The Board has increaed petitioner's crime in violation
    of several of his Federal Constitutional Rights.

24                 d. The California Supreme Court Construed Penal Code §3041
    in violation of fair warning.

25                 Result:  Petition was denied          Date of Result: 04-06-2006.

26          II.    Name of Court: Cal. Court of Appeals, 3rd Appellate District.

27                 Type of Proceeding:  Habeas Corpus Petition

28                 Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1      a. No evidence support the findings of the Board.

2      b. The Board has breached the plea bargain.

3      c. The Board has increased petitioner's crime in violation
   of several of his federal constitutional rights.

4      d. The Cal. Supreme Court construed Penal Code § 3041 in
   violation of a fair warning.

5      Result: Petition was denied    Date of Result: 04-06-2006.

6   III.   Name of Court: California Supreme Court

7      Type of Proceeding: Habeas Corpus Petition

8      Grounds raised (Be brief but specific):

9      a. No evidence support the findings of the Board

10     b. The Board has breached the plea bargain.

11     c. The Board has increased petitioner's crime in violation
   of several of his federal constitutional rights.

12     d. The Cal. Supreme Court construed Penal Code § 3041 in
   violation of fair warning.

13     Result: _____    Date of Result: _____

14  IV.   Name of Court: _____

15     Type of Proceeding: _____

16     Grounds raised (Be brief but specific):

17     a. _____

18     b. _____

19     c. _____

20     d. _____

21     Result: _____    Date of Result: _____

22   (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                          Yes _____    No  X

24     Name and location of court: _____

25  B. GROUNDS FOR RELIEF

26     State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1   need more space. Answer the same questions for each claim.

2           [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5           Claim One: No evidence support the Board's findings of unsuitability

6   for parole.

7   Supporting Facts: See Grounds, Facts and Authorities attached hereto.

8

9

10

11          Claim Two: The Board has breached the plea bargain petitioner struck

12   with the prosecutor.

13   Supporting Facts: See Grounds, Facts and Authorities.

14

15

16

17          Claim Three: The Board has increased petitioner's crime in violation of

18    several of his federal constitutional rights including fair warning.

19   Supporting Facts: See attached hereto Grounds with supporting facts and

20    authorities.

21

22

23          If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25

26

27

28

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3  of these cases:

4  _____

5  _____

6  _____

7  Do you have an attorney for this petition?                    Yes_____     No_X___

8  If you do, give the name and address of your attorney:

9  _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on _June 12, 2007_____

14            Date                                    Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

Artemio Arroyo  C-20149
P.O.BOX 689-BW-221
Soledad, Ca. 93960


UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| Artemio  Arroyo ) | |
| Petitioner ) | |
| vs. ) | PETITION FOR WRIT OF HABEAS CORPUS |
| ) | |
| Ben Curry, Warden ) | |
| Respondent ) | |


STATEMENT OF THE CASE

On February 13, 1980, petitioner pleaded guilty to second degree murder. See Exhibit "B" on pages 1-6.

On June 24, 1980, petitioner was sentenced by San Joaquin County Superior Court to a term commensurate to his second degree murder conviction. 15-years to life.

On September 22, 1989, was petitioner's Initial Parole Suitability Hearing held. See Exhibit "G".

Since the Initial Parole Suitability hearing was held numerous parole suitability hearings have been held without finding petitioner suitable for a parole release date. The last hearing was held on July 12, 2005. See a copy of the parole suitability hearing transcript at Exhibit "H".

1

From a parole suitability hearing held on February 19, 2003, petitioner administratively appealed and he also sought relief in San Joaquin County Superior Court and in the California Court of Appeals, Third Appellate District. Petitioner's petitions were denied. See a copy of the denials at Exhibit "A" on pages 6-9.

Then after the decision of the California Supreme Court in In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417 (Cal. 2005) petitioner started a second round of habeas corpus petitions in the San Joaquin County Superior Court, in the California Court of Appeals, Third Appellate District and in the California Supreme Court. See a copy of the decisions at Exhibit "A" on pages 10-13.

## PROTECTED LIBERTY INTEREST

Petitioner possesses protected liberty interest in parole suitability decisions. Greenholtz v. Inmates of Nebraska Penal & Corr., 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed.2d 668 (1979); Board of Pardons v. Allen, 482 U.S. 369, 96 L. Ed.2d 303, 107 S. Ct. 2415 (1987); Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006).

## GROUND ONE

THE BOARD OF PRISON TERMS AND BOARD OF PRISON HEARINGS (BOARD) WITHOUT SUPPORTING
EVIDENCE HAS FOUND PETITIONER UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION
OF THE DUE PROCESS CLAUSE TO THE UNITED STATES CONSTITUTION FOURTEENTH AMENDMENT.

In Tittle 15 of California Code of Regulations (CCR) § 2402 are the circumstances
the Board must consider to find the prisoners suitable or unsuitable for a parole
release date.
In Tit. 15 of CCR § 2402 (c) are the circumstances tending to show unsuitability.
CCR § 2402 (c)(1). Commitment Offense. "The prisoner committed the offense in an
especially heinous, atrocious or cruel manner."

The Board has found for the last 19 years that petitioner is not yet suitable for
parole and would pose an unreasonable risk of danger to society or a threat to public
safety if released from prison. That, clearly, the first thing that was considered
was the commitment offense. See Exhibit "H" on page 59.

In support of its findings the panel stated:

"This was the murder of Daniel Martino, who was 16 years old. I'm not entirely sure
why it wasn't the attempted murder of the other person in the car. This was a situa-
tion where Mr. Arroyo and his crime partners were gang members. According to Mr.
Arroyo, he's not quite sure why they took off after the victim's car. He thinks that
it may have had something to do with an argument that his brother had with the
victim and his friends that prior day. It sure looks like a gang-related crime.
The victims were chased by Mr. Arroyo and his crime partners in a situation that
must have been pretty interesting to watch. Apparently, the two cars full of people
were trying to attack each other with sticks as they drove down the street at which
point Mr. Arroyo picked up a load shotgun and fired at the victim's car. In probation
officer's report, it says that he thought he hit both of them in the victim's car
and that he observed the car veer to the left and crash into a parked vehicle. And
in discussing the crime today with Mr. Arroyo, he didn't, he indicated he really did
not know the victim. He didn't know whose gun it was. He didn't know whose car it was.
He wasn't quite sure why his crime partner wanted to go talk to them, and yet, with

none of the information available to him or with no interest in getting information, he picked up a load shotgun and shot at the teenaged boys killing one of them. Certainly, based on the information from the statement of facts, this crime was callous. It was clear there were multiple victims, and the crime was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering, and the motive for this crime was, I don't know, almost nonexistent. He was drunk, and he was mad.  It does not show what he was mad about, but he didn't know the victims, and he didn't know anything about the argument with his brother." See Exh. "H" on pages 59-61.

No evidence support the findings of the Board that petitioner is not suitable for a parole  and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.

On the year 2003 a Correctional Counselor believed that petitioner would pose a moderate degree of threat to public safety if released from prison. See Exhibit "D" on page 4.

On the year 2002 in Psychological Evaluation Report prepared by Jeff Howlin, Ed., D. Staff Psychologist concluded that if petitioner was released to the community, his violence potential was estimated to be slighly higher than the average citizen in the community. See Exhibit "E" on page 6.

In the most recent Psychological Evaluation Report prepared in 2005 by J. Steward, Psy. D. Clinical Psychologist, stimated that if petitioner were released to the community, his potential for violence is estimated to be about average as compared to the average citizen in the community. That the reason for his findings was petitioner's great maturity, as indicated by him no receiving CDC 115's within the last ten years, and his apparently responsible behavior at work. See Exhibit "E" on page 10.

Therefore, the above mentioned reports don't support  the findings of the Board that petitioner will pose an unreasonable risk of danger to society if released to the community. Tit. 15 of CCR § 2402 (a).

CCR § 2402 (c)(1)(A). "Multiple victims were attacked, injured or killed in the same or separate incidents."

The Board has found that it was clear there were multiple victims. See Exh. "H" pp. 60, 64.

Considering the uncharged offense for the last 19-years to increase petitioner's second degree murder offense to the greater offense of first degree murder, the Board has violated the Due Process Clause to the United States Constitution and several of petitioner's Federal Constitutional Rights. 14 Amend; Faretta v. California, 422 U.S. 806, 818, 45 L.Ed.2d 562, 572 (1975).

Since September 29, 1989, the Board has relied on the Multiple Victims factor to find petitioner unsuitable for a parole release date. That petitioner injured two victims with a single shot. See Exhibit "G" on pages 4, 6.

It would be better for petitioner if the District Attorney would charge and convict petitioner for slightly injuring the second victim than the Board using it for the last 19-years as some evidence to increased petitioner's crime of second degree murder to the crime of first degree murder and turns petitioner's 15-years to life sentence into a life without the possibility of parole.

CCR § 2402 (c)(1)(D). "The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering."

The Board for the last 19 years has found that the crime was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering. Exh. H p. 60.

This language refers to something akin to torture or that the victim suffered much more than that which would be inherent in any killing. In re Rosenkrantz, 95 Cal. Rptr. 2d 279, 287, 80 Cal. App. 4th 409, 419, fn. 13 (Cal. App. 2 Dist. 2000).

In petitioner's convicted offense there is not evidence in the record to support that the victim suffered more than any other victim in a second degree murder crime.

Petitioner shot one shot at the car the victim was driving and the victim died by the time he arrived at the hospital. See Exhibit "B" at p. 3.

The District Attorney convicted petitioner of second degree murder beyond a reasonable doubt and now the Board by finding "some evidence" on the commitment offense to find petitioner unsuitable for parole has increased petitioner's crime of second degree murder to the greater offense of first degree murder. This cannot be done without violating several of petitioner's federal constitutional rights.

The some evidence standard of proof established in Superintendent v. Hill, 472 U.S. 445, 105 S. Ct. 268 (1985) and adopted by the California Supreme Court in In re Powell, 45 Cal. 3d 894, 904-905, 248 Cal. Rptr. 431, 437 (Cal. 1988) is an Administrative Standards of Proof to prove the prisoner's misconduct in prison after he was convicted. It is not a standard of proof to find some evidence on the convicted offense of second degree murder to increase it to the greater offense of first degree murder and to turn petitioner's sentence of 15-years to life to life without the possibility of parole.

The Board cannot find some evidence on the commitment offense to increase the prisoner's crime without violating petitioner's several of his Federal Constitutional Rights. Santobello v. New York, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed,2d 427 (1971); Blackledge v. Allison, 431 U.S. 63, 52 L. Ed.2d 136, 97 S. Ct. 1621 (1977); Faretta v. California supra, 442 U.S. 806, 818, 45 L. Ed.2d 562, 572.

CCR § 2402 (c)(1)(E). "The motive for the crime is inexplicable or very trivial in relation to the offense."

The Board has found that the motive for the crime was almost nonexistent and that it was inexplicable. See Exhibit "H" on pages 61, 64.

An "inexplicable" motive is one that is unexplained or uninteligible, as where the commitment offense does nor appear to be related to the conduct of the victim and has other discernible purpose. A person whose motive for a criminal act cannot be explained or is unintelligible is therefore unussually unpredictable and dangerous. In Re Scott,

6

119 Cal. App. 4th 871, 893, 15 Cal. Rptr.3d 32, 40 (2004). Petitioner's motive clearly does not fit this definition.

The Board has relied on the following evidence to find that the motive was inexplicable: "That the victim and his group had threatened petitioner's brother. That petitioner was told about the threatening, but he didn't know the guys who had threatened his brother. That petitioner and his friends were drinking when they saw a car drive by with youngsters riding in it. That petitioner's friends told him those were the guys who had threatened his brother. That they chased the victim's car to talk to them about the threatening. That the victim's car didn't stop they started exchanging blows with pipes and clubs. That petitioner had retrieved a shotgun from under the seat  and shot the victim's car killing the victim." See Exhibit "H" on pages 59-60; Probation Officer's Report at Exhibit "B" and petitioner's version at Exh. "D" p. 1-2.

Because the car where petitioner and his friends were riding was not petitioner's car , it can be assumed petitioner didn't know under the seat of the car was a shotgun.  No evidence has ever presented to show thst prior to the shot petitioner knew a shot gun was under the seat of the car. Therefore, somebody must told him to retriev the shotgun from under the seat and shoot the victim's car or to the victim. Because petitioner was a juvenile at the time he shot the victim and he was heavily intoxicated he followed the orders.

Petitioner has claimed somebody from the back seat of the car habded him the shotgun and at least one witness declared that the driver of the car leaned forward to let petitioner shoot the victim's car or to the victim. A couple of petitioner's partners were charged with assault and another couple of them received immunity in exchange for their testimony. See Exhibit "B" on p. 5.

All these pieces of evidence show that the younsters who were riding with petitioner in the car encouraged him to shoot the victim or to the victim's car.

For the foregoing reasons the motive for the crime is not inexplicable or trivial in relation to the offense and therefore the findings of the Board are not supported by the evidence on the record.

As stated above for the last 19 years the Board has considered the commitment offense factos to find some evidence and increase petitioner's crime of second degree murder to the greater offense of first degree murder and to change the sentence of life with the possibility of parole to life without the possibility of parole. This cannot be done without violating several of petitioner's Federal Constitutional Rights.

CCR § 2402 (c)(2). Previous Record of Violence. Petitioner has not any previous record of violence. See Exhibit "E" on pages 5-6, 10.

CCR § 2402 (c)(3). Unstable Social History. "The prisoner has a history of unstable or tumultuous relationship with others."

The Board has found that petitioner does have certainly an unstable social history. See Exhibit "H" on pages 61, 64.

In support of this finding the Board has relied on the following evidence:  That petitioner was involved in a gang and ina substance abuse. That he talked about dropping out from school in ninth grade. That apparently he attempted to go back to school few times, but he never was able to complete another grade after that. See Exhibit "H" p. 61.

None of the facts relied on by the Board support that petitioner has an unstable and tumultuous relationship with others. No because he socialized with other youngsters means he had an unstable and tumultuous relationship with others. Neither because he had drank alcohol or had dropped from school to work and help his family means he had an unstable and tumultuous relationship with others.

Also the consideration of this circumstance for the last 19-years to find some evidence  to increase petitioner's crime of second degree murder to the greater offense of first degree murder and to turns petitioner's sentence of life with possibility of parole to a sentence of life without the possibility of parole violates the due Process Clause to the United States Constitution and other federal constitutional rights of petitioner.

CCR § 2402 (c)(6). Institutional Behavior. "The prisoner has engaged in serious mis-
conduct in prison or jail."

Prior to 1995 petitioner was issue some Disciplinary Rulre Violation Reports (RVR or
115). However, since then he has been disciplinary free and none of the RVR's were for
violence.

The Psychological Reports are favorable to petitioner's release on parole. See Exhib.
"E".    Eulogio Martin had received twenty disciplinary violations while in prison.
See Martin v. Marshall, 431 F. Supp.2d 1038, 1042 (N.D. Cal. 2006). However, his peti-
tion was granted. Id. at p. 1049.


              PETITIONER MEET THE CRITERIA TO BE FIND SUITABLE FOR PAROLE
              AND BE RELEASED FROM CUSTODY.

Under Title 15 of CCR Sub. 2402 (d) are the circumstances tending to show suitability.

CCR § 2402 (d)(1). No Juvenile Record. "The prisoner does not have a record of
assaulting others as a juvenile or committing crimes with a potential of personal
hard to victims."

Petitioner has not any juvenile record of assaulting others nor he did commit crimes
with potential of personal hard to victims. See Exhibit "D" on page 2.

(2). Stable Social History. "The prisoner has experienced reasonably relationships
      with others."

After over than 28-years of incarceration petitioner is still having a good relation-
ship with his family members and friends. See Exhibit "H" on pages 33-39.

(3). Signs of Remorse. Since petitioner was arrested he has expressed remorse for the
death of the victim and for wherever wrong he did. See Exh. "D" on p.2; Exh. "E" p. 5.

(4). Motivation for the Crime. The evidence shows that petitioner committed the crime
because the victim and his friends had threatened to kill petitioner's brother and
because petitioner was very young, he was encouraged by other juveniles to shoot the
victim or the victim's car and ʰpetitioner was heavily intoxicated and all these

9

factors contributed to the shooting.

(5). N/A.

(6).  Lack of Criminal History. "The prisoner lacks any significant history of
      violent crime."

Except for the current offense petitioner lacks any history of violent crimes. See
Exhibit "E" on pages 5-6, 10.

(7). Age. "The prisoner's present age reduces the probability of recidivism."
      Petitioner was born on 6-6-62. See Exhibit "B" on page 2.

  Taking into consideration that petitioner has been imprisoned since he was a juvenile,
and that when he starting maturing he has abide by the rules and he has not break the
rules for the last 13-years, at the age of 45 there is not reason to believe that he
will recur to break the law upon his release from custody.

(8). Understanding and Plans for Future. "The prisoner had made realistic plans for
release or has developed marketable skills that can be put to use upon release."

  Petitioner has both. He has realistic plans for release and he has developed marke-
  table skills while he has been in prison.

  The Board found that petitioner has realistic plans for release. See Exhibit "H" on
pages 33-39, 62.

  While petitioner has been incarcerated he has developed marketable skills by comple-
ting four vocationals. He has completed Small Engine Repair; Air Conditioning & Refri-
geration; Sheet Metal; and Carpentry. See Exhibit "D" on page 3; Exhibit "E" on page
3 and Exhibit "F".

(9).  Institutional Behavior. "Institutional activities indicate an enhanced ability
to function within the law upon release."

  While in prison petitioner obtained his GED; he completed four vocationals; and for
the last 16-years he has completed numerous Self-Help programs including NA and AA;

14 Week Impact Program; Two different courses of 44-Wekk of Anger Management; a
Parenting Program; Project C.H.A.G.E. Program; and Monterey County Kids Coalition
Project. See Exhibit "C".

   For the foregoing reasons petitioner meet the criteria to be released on parole and
the Board for the last 19 years capriciously and arbitrarily has found him unsuitable
for a parole release date.


Petitioner was not convicted under the Indeterminate Sentence Law which requires
rehabilitation of the prisoner before he be released to the community. Petitioner
was convicted and he pleaded guilty on a different kind of ISL. Petitioner was
convicted and he pleaded guilty under an ISL which requires uniformity on the
sentences for offenses of similar gravity and magnitude.

   The Indeterminate Sentence Law (ISL) requires the inmate to be rehabilitated in
order to be released from prison. Under the ISL the Board focuses principally on the
rehabilitation of the prisoner rather than on the commitment offense to find him
suitable for a parole release date. See Williams v. New York, 337 U.S. 241, 247,
93 L. Ed. 1337, 1342, 69 S. Ct. 1079 (1949); Greenholtz v. Inmates of Nebraska Penal
& Corr., 442 U.S. 1, 10, 99 S. Ct. 2100, 2105 (1979); People v. Morse, 36 Cal. Rptr.
201, 211, fn. 8 (Cal. 1964); In re Minnis, 7 Cal.3d 639, 644, 102 Cal. Rptr. 749
(Cal. 1972).

   However, in California in 1977 the Uniform Determinate Sentence Act came into
effect. See In re Stanworth, 33 Cal.3d 176, 177-178, 187 Cal. Rptr. 783 (Cal. 1982);
In re Powell, 45 Cal.3d 894, 898, 248 Cal. Rptr. 431, 433 (Cal. 1988). This law is
known as the Determinate Sentence Law (DSL). See In re Stanworth, supra, 33 Cal. 176.
Under the DSL it is required the Board to focuses principally on the commitment
offense rather than on the rehabilitation of the inmate to find him suitable for a
parole release date. California Penal Code § 3041; Tit. 15 of CCR § 2402.

However, the focuses on the commitment offense requires uniformity on the sentences for offenses of similar gravity and magnitude with respect to threat to the public. Penal Code § 3041 (a); CCR §§ 2401, 2403 (c).

Tit. 15 of CCR § 2403 (c) is to achieve the uniformity on the sentences requirement. CCR 2401 requires the Board to consider CCR § 2403 (c) to find the prisoner suitable for a parole release date and to set his parole release date. However, in violation of the Due Process Clause to the United States Constitution the Board has failed to consider the uniformity on the sentences requirement to find petitioner suitable for a parole release date.

The Board has found some evidence on the commitment offense alone to find petition-er unsuitable for parole and it has failed to achieve the uniformity on the sentences requirement in a reasonable manner.

Because the Board has not found petitioner suitable for a parole release date after petitioner had served the maximum term required by the uniformity on the sentences requirement, the Board is applying the uniformity on the sentences requirement in an unreasonable, oppressive and arbitrary manner.

Under the terms on the Matrix to achieve the uniformity on the sentences require-ment, the credits petitioner has earned during the 28-years he has been incarcerated are not included. Tit. 15 of CCR §§ 2403 (c); 2410-2411.

If once the Board find petitioner suitable for a parole release date and provide him with the credits he has earned, by that time he will be served a term longer than the maximum term required by the uniformity on the sentences requirement for a first degree murder conviction. Tit., 15 of CCR § 2403 (b).

By not considering the uniformity on the sentences requirement in a reasonable manner, the Board has increased petitioner's crime of second degree murder to the greater offense of first degree murder.   In violation of several of petitioner's federal constitutional rights. 14th Amendment.

Because petitioner has served in prison seven years longer than the maximum term required by the uniformity on the sentences requirement, there is no longer some evidence on the commitment offense to find him unsuitable for a parole release date and to continue holding him in prison.

The Board's finding of some evidence on the commitment offense to increase petitioner's crime of second degree murder to the greater crime of first degree murder and to turns petitioner's sentence of 15-years to life into life without the possibility of parole is contrary to the some evidence established by the United States Supreme Court in Superintendent v. Hill, supra, 472 U.S. 445, 105 S. CT. 2768 in that the some evidence standard of proof establishe in Superintendent v. Hill is to be applied in Administrative Misconduct of the prisoner rather than to increase the prisoner's convicted offene.

The Board's focus on the commitment offense rather than on the rehabilitation of the prisoner is contrary to the clearly established law by the United States Supreme Court which requires the Board to focuses on the rehabilitation of the inmate rather than on the crime. Williams v. New York, supra, 337 U.S. 241, 247, 93 L.Ed. 1337, 1342; Greenholtz v. Inmates of Nebraska, supra, 442 U.S. 1, 10, 99 S. Ct. 2100, 2105; McGinnis v. Royter, 410 U.S. 263, 35 L. Ed.2d 282, 93 S. Ct. 1055 (1973).


Petitioner requests his immediate release from custody because the Board has failed to apply the uniformity on the sentences requirement to find him suitable for a parole release date and in this manner the Board has increased petitioner's crime of second degree murder to the greater crime of first degree murder and it has turned petitioner's 15-years to life sentence into a sentence of life without the possibility of parole.

13

**GROUND TWO**

<u>THE STATE OF CALIFORNIA COURTS FAILED TO APPLY THE LAW OF CONTRACTS AND TO
CONSTRUE THE AGREEMEN PETITIONER STRUCK WITH THE PROSECUTOR.</u>

Under Santobello v. New York, 404 U.S. 257, 261-262, 92 S. Ct. 495, 30 L.Ed.2d 427
(1971) a criminal defendant has a due process right to enforce the terms of his
plea agreement. See also Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).

On November 29, 2006 when the California Supreme Court summarily denied Arroyo's
petition for writ of habeas corpus, it has been clearly established federal law for
almost 20-years that the construction and interpretation of state court plea agree-
ments and the committan obligations following thereform are, within broad bounds of
**reasonableness, matters** of state law. Ricketts v. Adamson, 483 U.S. 1, 6, n. 3, 107
S. Ct. 2680, 97 L.Ed.2d 1 (1987); Buckley v. Terhune, 441 F.3d 683, 694, 695 (9th
Cir. 2006).

In California, a negotiated plea agreement is a form of contract, and it is inter-
preted according to general contract principles. People v. Shelton, 37 Cal.4th 759,
767, 37 Cal. Rptr.3d 354, 125 P.3d 290 (2006); People v. Alvarez, 127 Cal. App.3d
629, 633, 198 Cal. Rptr. 167, 168 (Cal. App. 3 Dist. 1982).  And it is interpreted
according to the same rules as other contracts. People v. Toscano, 124 Cal. App. 4th
340, 344, 20 Cal. Rptr. 3d 923 (2004); People v. Hanay, 207 Cal. App.3d 1034, 1037-
1038, 255 Cal. Rptr. 276, 278 (Cal. App. 3 Dist. 1989).

Thus, under Adamson, California Courts are required to construe and interprete
plea agreements in accordance with state contract law. Buckley v. Terhune, 441 F.3d
at 695.

In applying the principle and rules of construction in Brown on the basis of Santo-
bello and Adamson, the Court of Appeals for the Ninth Circuit held that the State Court
in failing to properly apply California contract law when interpreting a plea agreeme-
nt had engaged in an objectively unreasonable application of clearly established

14

federal law under § 2254 (d)(1). Brown, 337 F.3d at 1160, n. 2.

The State of California Courts failed to apply the law of contract. Therefore, their decision is either unreasonable or unquestionably contrary to clearly established federal law. Buckley v. Terhune, supra, 441 F.2d at 695, and n. 5.

In California, all contracts whether public or private are to be interpreted by the same rules. Cal. Civil Code § 1635; See also Shelton, 37 Cal. 4th at 766-767, 37 Cal. Rptr.3d 354, 125 P.3d 290; Toscano, 124 Cal. App.4th at 344, 20 Cal. Rptr.3d 923. A Court must first look to the plain meaning of the agreement's language. Cal. Civil Code §§ 1638, 1644. If the language of the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civil Code § 1649. The inquiry considers not the subjective belief of the promisor but, rather, the "objective reasonable" expectation of the promisee. Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1265, 10 Cal. Rptr.2d 538, 833 P.2d 545 (1992); Badie v. Bank of Am., 67 Cal. App.4th 779, 802, n. 9, 79 Cal. Rptr. 2d 273 (1998). Although the intent of the parties determines the meaning of the contract, the relevant intent is objective-that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." Cal. Civil Code §§ 1636, 1638; United Commercial Ins. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992). Courts look to the objective manifestations of the parties's intent. Shelton, 37 Cal. 4th at 767, 37 Cal. Rptr.3d 354, 125 P.3d 290.

If after this second inquiry the ambiguity remains, "The language of a contract should be interpreted most strongly against the party who caused the uncertainy to exist." Cal. Civil Code § 1654; See also Toscano, 124 Cal. App. 4th at 345, 20 Cal. Rptr.3d 923 (ambiguities in a plea agreement are construed in favor of the defendant"). AIU Ins. Co. v. Superior Court, 749 P.2d 1253, 274 Cal. Rptr. 820, 832-833, 51 Cal. 3d 807, 822-823 (Cal. 1990); Buckley v. Terhune, 441 F.3d at 695-696; Mastrobuono v. Shearson Lehman Hulton, Inc., 514 U.S. 52, 62-63, 115 S. Ct. 1212, 1219 (1995).

"A contractual term is "ambiguous" if it is susceptible of two or more distinct meanings." Pengilly v. Guardian Life Ins. Co. of America, 81 F. Supp.2d 1010, 1020 (N.D. Cal. 2000); In re Marriage of Whitney, 139 Cal. Rptr. 324, 326, 71 Cal. App.3d 179, 183 (Cal App. 2 Dist. 1977).

"It is cardinal principle of contract construction that document should be read to give effect to all provisions and to render them consistent with each other." Mostrobuono v. Shearson Lehman Hutton, Inc., supra, 115 S. Ct. at 1219, 514 U.S. at 63.

"Under California Law, language in a contract must be construed in the context of that instrument as a whole and in the same circumstances of that case, and cannot be found to be ambiguous in the abstract." Avemco Ins. Co. v. Davenport, 140 F.3d 839, 843 (9th Cir. 1998); Stanford Ranch, Inc. v. Maryland Gas Co., 89 F.3d 618, 626, (9th Cir. 1996); Bank of the West v. Superior Court,supra, 2 Cal. 4th 1254, 1265, 10 Cal. Rpre.2d 538, 545.

<u>Every statute, regulation and court decisions that were in existence at the time petitioner struck the agreement with the prosecutor for a second degree murder offense are part of the contract.</u>

Under the laws of contract it is required that the laws that were in existence when petitioner bargained for second degree murder offense apply. U.S. Const. Art. 1, § 10, cl. 1; Wood v. Lovett (1941) 313 U.S. 362, 85 L.Ed. 1404, 61 S. Ct. 983; United States Trust Co. v. New Yersey, 431 U.S. 1, 52 L. Ed.2d 92, n. 17, 97 S. Ct. 1505 (1977); Swenson v. File (1970) 3 Cal.3d 389, 393, 90 Cal. Rptr. 580, 582, 143 Cal. Rptr. 558, 559; People v. Haney (1980) 207 Cal. App.3d 1034, 1038.

Generally all aplicable laws in existence when the agreement is made necessarily enter into such contract and form part of it, without any stipulation to that effect, as fully as if they were expressly referred to and incorporated in its terms; such principle embraces local ordinances as weel as state statutes. Grubb v. Ranger Ins. Co., 143 Cal. Rptr. 558, 559, 77 Cal. App.3d 526 (Cal. App. 1 Dist. 1978); Norfolk & Western v. Am. Train Dispatchers, 499 U.S. 115, 129-130, 111 S. Ct. 1156, 1164 (1991); Digital

Equipment Corp. v. Desk Top Direct, Inc., 511 U.S. 683, 114 S. Ct. 1992, n. 5 (1994). This is also true of valid regulations having the force and effect of laws of general application. Rihart v. Clark, 448 F.2d 170, 173 (1971).

In determining intent of lawmakers a court looks first to words of provisions, given them their usual and ordinary meaning, and administrative regulations are subject to the same rules. Kashani v. Tsann Kuen China Enterprise Co., Ltd., 13 Cal. Rptr.3d 174, 187, 118 Cal. App. 4th 531, 550 (Cal. App. 2 Dist. 2004).

The parties are presumed to have had existing law in mind when they executed their agreement. Existing law includes decisions of the appellate courts interpreting statutes. In re Retirement Cases, 110 Cal. App. 4th 426, 447-448, 1 Cal. Rptr.3d 790, 808 (Cal. App. 1 Dist. 2003).

Decisions of the reviewing courts of the state interpreting statutes applicable to a contract are part of such contract. Kilfoy v. Fritz, 270 P.2d 579, 582, 125 Cal. App.2d 291 (1954).

Laws enacted sunsequent to execution of agreement are not deemed to become part of agreement unless its language clearly indicates such to have been the intention of the parties. Swenson v. File, supra, 3 Cal. 3d at 393, 90 Cal. Rptr. at 582; City of Torrance v. Worker's Comp. App. Bd., 32 Cal.3d 371, 379, 185 Cal. Rptr. 645, 648 (Cal. 1982).

The above cited laws show that in order to construe the contract petitioner struck with the prosecutor for a second degree murder offense, every relevant statute, regulations, sentencing rules of the Superior Court, and Court decisions that were in existence when petitioner entered into agreement with the prosecutor must be considered as if they were expressly referred to and incorporated in its terms.

(a). <u>The Courts of the State of California failed to construe the contract and
consider the following laws in construing it.</u>

<u>Requirement of uniformity on the sentences shall be considered in construing
the plea agreement.</u>

Penal Code § 3041 (a) requires that one year prior to the prisoner's minimum parole
release date the Board shall consider a prisoner for parole release date and shall
normally set his parole release date. That the release date shall be set in a manner
that will provide **uniform terms for offenses of similar gravity and magnitude in
respect to their threat to the public, and that will comply with** the sentencing rules
that the Judicial Council may issue and any sentencing information relevant to the
setting of parole release date. In re Stanworth, 33 Cal. 3d 176, 182, 187 Cal. Rptr.
783, 786-787 (Cal. 1982); In re Seabock, 140 Cal. App.3d 29, 189 Cal. Rptr. 310, n. 7
(Cal. App. 1 Dist. 1983); In re Duarte, 143 Cal. App.3d 943, 948, 193 Cal. Rptr. 176,
179 (Cal. App. 3 Dist. 1983).

Since petitioner bargained for a second degree murder offense, the sentencing rules
of the Superior Court have required uniformity on the sentences for offenses of similar
gravity and magnitude. Cal Rules of Court, Rule 410 (g); New rule 4.410 (a)(7).

Title 15 of CCR § 2401 requires the setting of parole release date in a manner that
provide uniform terms for offenses of similar gravity and magnitude with respect to
the threat to the public. It also mandates the Board to consider the criteria and
guidelines (matrices) in determining suitability for parole and the setting of parole
release date.

In CCR § 2403 (c) is the Matrix to achieve the uniformity on the sentences required
by Penal Code § 3041 (a).

<u>Benefits to petitioner that indiced him to bargain for a second degree murder</u>
<u>offense must be considered to construe the contract.</u>

<u>Different degrees of criminal culpability must be considered to construe the</u>
<u>contract because petitioner bargained for a lesser included offense.</u>

The United States Supreme Court has recognized different degrees of criminal
culpability. Mullaney v. Wilbur, 421 U.S. 684, 697-698, 95 S. Ct. 1881, 1889 (1975);
Solem v. Helm, 77 L.Ed. 2d 637, 651 (1983); Harmelin v. Michigan, 501 U.S. 957, 996,
111 S. Ct. 2680, 2702 (1991); Apprendi v. New Yersey, 120 S. Ct. 2348, 2360 (2000).
The State of California also recognizes the principle of different degrees of
criminal culpability. The Legislature has enacted numerous statutes with different
degrees of criminal culpability.

Relevant in this issue is Penal Code § 189 for first degree murder offenses.
Sentences 25-years to life, life without the possibility of parole and death penalty.

Penal Code § 187 for second degree murder. Sentences 15-years to life. See Penal
Code § 190; In re Jeanice D., 28 Cal.3d 210, 219, 168 Cal. Rptr. 455, 460 (Cal. 1980);
Second degree murder is a lesser included offense of first degree murder. People v.
Stearns, 92 Cal. Rptr. 69, 14 Cal. App. 3d 178 (Cal. App. 2 Dist. 1971).

In Schmuck v. U.S., 489 U.S. 705, 109 S. Ct. 1443 (1989) the Court recognized lesser
included offenses. And in Carter v. U.S., 530 U.S. 255, 147 L. Ed.2d 203, 120 S.
Ct. 2159, n. 2 (2000) the Court held that: "By "lesser offense" Schmuck meant
lesser in terms of magnitude of punishment."

<u>When a defendant plea guilty both the state and the defendan</u>
<u>benefit from plea bargains.</u>

Benefits to the State.

"When the State enters a plea bargain with a defendan it receives immediate and <u>tangi-</u>
ble·benefits, such promptly imposed punishment without the expenditure of prosecuto-
rial resources, the avoidance of trial, scare judicial and prosecutorial resources
are conserved for those cases in which there is a substantial issue of the defendant's

guilty, it helps to relief congested court calendars and there are other not insignificant intangible benefits. Brady v. United States, 397 U.S. 742, 752, 90 S. Ct. 1463, 1471 (1970); Town of Newton v. Rumery, 480 U.S. 396, 107 S. CT. 1187, n. 3 (1987).

<u>Petitioner is entitle to the benefits he bargained for ( a punishment commensurate to his second degree murder conviction). The benefits to petitioner is a lesser punishment than the punishment for a first degree murder offense.</u>

"When a defendant enters into plea bargain his benefit is a reduced sentence, the correctional process can begin immediately, and the practicle burdens of trial are eliminated." Brady v. United States, supra, 397 U.S. at 752, 90 S. Ct. at 1471; Marry v. Johnson, 467 U.S. 504, 104 S. Ct. 2543, n. 8 (1984).

"If "the State or a responsible officer thereof, such as a Judge of competent authority or district attorney, has entered into a bargain purporting to commit the state to give the defendant a reward, in the form of ... a lesser punishment" in exchange for a plea of guilty, the defendant may secure relief." People v. Sharp, 320 P.2d 589, 591 (1958); Santobello v. New York, 404 U.S. 257, 261-262, 92 S. Ct. 495, 498-499.

"both the State and defendant may profit from a plea bargain. The benefit to the defendant from lesser punishment does not need elaboration; benefit to the State lies in the savings in costs of trial, the increased efficiency of the procedure and the further flexibility of the criminal process." People v. West, 3 Cal.3d 595, 604, 91 Cal. Rptr. 385, 389 (Cal. 1970); People v. Collins, 21 Cal.3d 208, 215, 145 Cal. Rptr. 686, 690 (Cal. 1978); People v. Shepeard, 169 Cal. App. 3d 580, 586, 215 Cal. Rptr. 401, 405.

Petitioner pleaded guilty under Penal Code § 1192.1. Penal Code § 1192.1 held:

"Upon a plea of guilty to an information or indictment accusing the defendant of a crime or attempted crime divided into degrees when consented to by the prosecuting attorney in open court and approved by the court, such plea may specify the degree thereof and in such event the defendant cannot be punished for a higher degree of the crime or attempted crime than the degree speecified."

Penal Code § 1192.2 has similar language. See People v. Mikhail, 13 Cal. App. 4th 846, 856, 16 Cal. Rptr.2d 641, 647 (Cal. App. 4 Dist. 1993). These Penal Codes must be considered in construing the contract.

As stated above second degree murder is a lesser included offense of first degree murder and that lesser included offenses mean lesser in terms of magnitude of punishment.

When petitioner bargained for a second degree murder crime, second degree murder offenses required a lesser punishment than the greater offense of first degree murder. Tit. 15 of CCR § 2403 (b), (c).

Therefore, the benefit to petitioner ehen he bargained for a second degree murder offense was the lesser punishment as it is established in the Matrix. CCR § 2403 (c).


(b).  It is required the Courts to construe the contract in a manner that make the agreement reasonable.

"Thepurpose of the law of contracts is to protect the reasonable expectations of the parties." (Bensui v. Edmar Co. (1995) 40 Cal. App. 4th 468, 475, 47 Cal. Rptr.2d 12.).  "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertained and lawful." (Cal. Civil Code § 1636.) "The interpretation must be fair and reasonable, not leading to absurd conclusions. [citation] (Transamerica Ins. Co. v. Sayble (1987) 193 Cal. App. 3d 1562, 1566, 239 Cal. Rptr. 201.") "The Court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable. [citation]" Strong v. Theis (1986) 187 Cal. Apo. 3d 913, 920-921, 232 Cal. Rptr. 272.); Herring v. Teradyne, Inc. 256 F. Supp.2d 1118 (S.D. Cal. 2002); Congregation ETZ Chain v. City of Los Angeles, 371 F.3d 1122, 1126 (9th Cir. 2004).

"The contract must be construed as a whole, without given a distorting emphasis to isolate words or phrases." Citizens v. HT Santa Barbara, supra, 117 Cal. 4th 1073, 1076-1077, 12 Cal.3d 249, 251; City of El Cajon c. El Cajon Police Officers' Assn., 49 Cal. App. 4th 64, 71, 56 Cal. Rptr.2d 723, 727 (Cal. App. 4 Dist. 1996).

## GROUND THREE

THE BOARD OF PRISON TERMS AND THE BOARD OF PRISON HEARINGS (THE BOARD) HAVE
BREACHED THE PLEA AGREEMENT PETITIONER STRUCK WITH THE PROSECUTOR BY NOT
RELEASING HIM WITHIN THE TERMS ESTABLISHED BY THE UNIFORMITY ON THE SENTENCES
REQUIREMENT AND DUE TO IT THE BOARD HAS INCREASED THE CRIME OF HIS SECOND
DEGREE MURDER CONVICTION TO THE GREATER CRIME OF FIRST DEGREE MURDER IN VIOLATION
OF THE LAW OF CONTRACT AND THE UNITED STATES CONSTITUTION. 5TH, 6TH, 14TH Amend.

Petitioner is attacking the sentence not as it was imposed but as it has been
executed. Halprin v. United States, 295 F.2d 458 (9th Cir. 1961). Therefore, this
Court has jurisdiction to review this claim because petitioner and the Warden of the
prison are within the Court's jurisdiction. See also the rules of the U.S. District
Court, Northern District of California, rule 2254-3 (b)(2).

On February 13, 1980, petitioner pleaded guilty to second degree murder and he was
sentenced to 15-years to life.

Petitioner pleaded guilty with the reasonable expectation that he will be deprived
of his liberty only to the extent established by the statutory and regulatory laws
as they were in existence at the time he entered into the agreement with the prosecu-
tor in that the law hold: "The purpose of the law of contracts is to protect the
reasonable expectations of the parties." Conner v. Conner, 76 Cal. App. 4th 646, 652,
90 Cal. Rptr.2d 687, 691 (Cal. App. 2 Dist. 1999); Citizena v. HT Santa Barbara, 117
Cal. App.4th 1073, 1076, 12 Cal. Rptr.3d 249, 251 (Cal. App. 2 Dist 2004). See also
U.S. Trust Co., v. New Yersey, 431 U.S. 1, 52 L.Ed.2d 92, n. 17 (1977); I.N.S. v.
St. Cyr., 533 U.S. 289, at 316, 321-323, 121 S. Ct. 2271, 2288, 2291-2292 (2001);
Brown v. Hood, 202 F.3d 1211, at 1220-1222 (9th Cir. 2000); Magana-Pizano v. I.N.S.
200 F.3d 603, 613 (9th Cir. 1999). However, the Board in violation of the contractual
law has held petitioner in custody beyond the maximum terms established by the Statutes
and regulations. Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227, 2229 (1980).

22

Breach can be either actually or anticipatory. An anticipatory breach occurs when a party expressly and unequivocally refuses to perform, or when its conduct places the party in a position where it cannot substantially perform. Taylor v. Johnston, 15 Cal. 3d 130, 137, 123 Cal. Rptr. 641, 646, 539 P.2d 425 (1975).

Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract. The repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform ... An implies repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible. Martinez v. Scott Specially Gases, Inc., 83 Cal. App. 4th 1236, 1246, 100 Cal. Rptr.2d 403, 409 (Cal. App. 1 Dist 2000); Inamed v. Kuzmak, 275 F. Supp.2d 1100, 1130 (N.D. Cal. 2002).

Specific performance is a proper remedy for anticipatory breach (repudiation) just as it is for actual breach, so long as all other requirements for grnating specific performance are met. Am-Cal.. Investment Co. v. Sharley Estates, Inc., 63 Cal. Rptr. 518, 527, 255 Cal. App.2d 526 (Cal. App. 4 Dist. 1967); Inamed v, Kuzmak, supra, 275 F. Supp.2d at 1131.

Under California Law, claim for breach of contract musr be based on nonperformance of express promises or legal duties contained in contract. Traumann v. Southland Corp., 858 F. Supp. 979, 982 (N.D. Cal. 1994); Unjustified failure of an obligator to per-form a contract constitutes a breach of that contract. Eric v. Granoff, 167 Cal. Rptr. 538, 543, 109 Cal. App.3d 920, 930 (Cal. App. 2 Dist. 1980).

In violation of the contractual law and in violation of the due process clause to the United States Constitution the Board has breached the plea agreement petitioner entered with the prosecutor because at the parole suitability hearings it has failed to consider CCR § 2401, 2403 (c); the uniformity on the sentences requirement of Penal Code § 3041 (a); the sentencing rules of the Superior Court;  the clearly

established principle by the California Government and United States Supreme Court which recognize different degrees of criminal culpability and every relevant, applicable law that was in existence at the time petitioner struck the plea bargain, to find petitioner suitable for a parole release date and release him as it is required by the principle of uniformity on the sentences for crimes of similar gravity and magnitude.

By failing to consider every applicable law that were in existence when petitioner entered into the plea agreement, the Board has repeatedly found petitioner unsuitable for a parole release date on the commitment offense alone and in this manner it has breached the plea agreement petitioner struck with the prosecutor of second degree murder crime and the Board has failed to perform by not releasing petitioner from prison in accordance to the terms established for his second degree murder conviction.

By failing to consider every applicable law that was in existence when petitioner entered into the plea agreement and releasing petitioner in accordance to the established terms, the Board has increased petitioner's crime of second degree murder to the greater offense of first degree murder. U.S. Conts. 14 Amendment and Art. 1 §10,Cl. 1

"Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach. Franconia Associates v. U.S., 122 S. Ct. 1993, 2002, 536 U.S. 129 (2002).

Under California Law, where no time limit is specified for performance of an act a reasonable time is implied. Cal. Civil Code § 1657; Fosson v. Palace (Waterland), LTD., 78 F.2d 1448, 1453 (9th Cir. 1996).

"A contract cause of action does not accrue until the contract has been breached." Reihert v. General Ins., 68 Cal.2d 822, 830-831, 69 Cal. Rptr. 321, 442 P.2d 377 (1968).

The essential elements of a breach of contract action are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

the resulting damages to plaintiff. Lortz v. Connelli, 78 Cal. Rptr. 6, 8, 273 Cal.
App. 2d 286 (Cal. App. 1 Dist. 1969); Inamed v. Kuzmak, supra, 275 F. Supp.2d at 1130.

## FIRST ELEMENT

A plea agreement is an essence a contract between the defendant and the prosecutor to
which the court consents to be bound. People v. Shepeard, 169 Cal. App.3d 580, 586,
215 Cal. Rptr. 401, 405 (Cal. App. 1 Dist. 1985); People v. Alvarez, 198 Cal. Rptr. 167,
168, 127 Cal. App. 3d 629, 633 (Cal. App. 3 Dist. 1982).

Because the agreement between the prosecutor and petitioner is a valid contract the
first element for the breach of contract is established.

## SECOND ELEMENT
### Petitioner's performance or excuse for nonperformance.

Petitioner in good faith has performed his part of the contract. The minimum of peti-
tioner's sentence is 15-years.  See the Matrix for the Base Term at CCR § 2403 (c).
At the time petitioner struck the agreement with the prosecutor Penal Code § 190 (a)
required the minimum of petitioner's sentence be reduced by one third for good conduct
and participation credits from Penal Code §§ 2930-2933. See al so CCR § 2400 and In re
Monigold, 253 Cal. Rptr. 120 (Cal. App. 4 Dist. 1988).
By reducing one third of credits from petitioner's minimum term (15-years) his minimum
term is ten years. People v. Smith, 35 Cal.3d 798, 809, 201 Cal. Rptr. 311 (Cal. 1984).
Penal Code § 3041(a); Sentencing Rules of the Superior Court, Rule 410 (g) and CCR
§ 2401 require uniformity on the sentences. CCR § 2403 (c) is to achieve the uniformity
on the sentences requirement for second degree murder convictions. As it was Penal Code
§ 1170 et., seq. for other prisoners who were serving indeterminate sentences when the
Uniform Determinate Sentence Act came into effect. See Guzman v. Morris, 644 F.2d 1295,
1296 (9th Cir. 1981).

If the contract is to be construed in a reasonable manner, the term petitioner must serve in prison is a term within the terms established in the Matrix. According to the matrix to achieve the uniformity on the sentences requirement for second degree murder convictions the minimum term is 15-years and the maximum term is 21-years. CCR § 2403 (c). No credits included.

If in the future petitioner is find suitable for parole he is entitle to credits under CCR §§ 2410-2411.

If in the future the Board finds petitioner suitable for parole and provide him with the credits he is entile, by that time petitioner had served a term greater than the maximum term required by the matrix for first degree murder conviction. (33years without credits). CCR § 2403 (b).

If the  is going to use the matrix to achieve the uniformity on the sentences require-ment for second degree murder convictions and the Board set petitioner's term to be 14-years (for example) it will be unreasonable to have petitioner serve over than 30-years in prison and then use the matrix to achieve the uniformity on the sentences requirement and set his term to be 14-years.

If the uniformity on the sentences requirement is going to be achieved in a reasonable manner, petitioner has served  in prison 7-years  more than the maximum term required by the matrix for his second degree murder conviction.

Because it is required the Board to consider the laws that were in existence when peti-tioner bargained for a second degree murder crime, United States Trust Co. v. New yersey, 431 U.S. 1, 52  L.Ed.2d 92, n. 17, 97 S. Ct. 1505 (1977); Swenson v. File, 3 Cal.3d 389, 393, 90 Cal. Rptr. 580, 582; Grubb v. Danger Ins. Co. (1978) 77 Cal. App.3d 526, 529, 143 Cal. Rptr. 558, 559; People v. Hanay (1989) 207 Cal. App.3d 1034, 1038, 255 Cal. Rptr. 276, 278, the above mentioned statutes and regulations apply to petitioner's contract with the prosecutor and petitioner has performed his part of the agreement by serving in prison a term longer than the maximum term required by the uniformity on the sentences requirement. Penal Code § 3041 (a); CCR § 2403 (c).

While incarcerated petitioner has developed marketable skills to put on use upon his release on parole.

He completed vocational Samll Engine Repair; Vocational Air Conditioning & Refrigeration; Vocational Sheet Metal; and Carpentry. See Exhibit "D" on p. 3; Exhibit "E" on p. 3 and Exhibit "F".

The Board found petitioner has realistic plans for release. See Exhibit "H" on pages 33-39, 62.

Petitioner obtained his GED; and he has completed numerous Self-Help programs including NA and AA; 14 Week Impact Program; Two different courses of 44-Week of Anger management; a Parenting Program; Project C.H.A.N.G.E. Program; and Monterey County Kids Coalition Project. See Exhibit "C".

Therefore, Mr. Arroyo has performed his part of the agreement.

In Brown v. Poole, 337 F.3d 1155, 1159 the Ninth Circuit Court of Appeals held that:

"It is clear from Santobello v. New York, 404 U.S. 257 that due respect for intergrity of plea bargainst demands that once a defendant has carried out his part of the bargain the government must fulfill its part."

## THIRD ELEMENT

When petitioner bargained for the second degree murder offense the law in existence at that time required that he will not be punished for a greater degree of the crime. Penal Code §§ 1192.1, 1192.2; Santobello v. New York, supra, 404 U.S. 257, 92 S. Ct.495; Blackledge v. Allison, 431 U.S. 63, 52 L.Ed.2d 136, 97 S.Ct. 1621 (1977); People v. West (1970) 3 Cal.3d 595, 607-611, 91 Cal. Rptr. 385, 392-395, fn. 10; In re Troglin, 51 Cal. App.3d 434, 438, 124 Cal. Rptr. 234, 237 (Cal. App. 1 Dist. 1995).

However, the Board has breached the plea agreement petitioner struck with the prosecutor by finding some evidence in petitioner's convicted offense and by disregarding the uniformity on the sentences requirement and in this manner increasing petitioner's second degree murder offense to the greater offense of first degree murder. Therefore,

the Board has failed to perform because it has failed to consider the laws that were in existence when petitioner struck the plea agreement with the prosecutor specifically the Board has failed to release petitioner from custody within the terms established by the uniformity on the sentences requirement. CCR § 2403 (c).

In Schmuck v. U.S., 705, 109 S. Ct. 1443 the Court recognized lesser included offenses. And In Carter v. U.S., 530 U.S. 255, 147 L.Ed.2d 203, 120 S. Ct. 2159, n. 2 the Court held that: "By "lesser offense," Schmuck meant lesser in terms of magnitude of punishment." See also Solem v. Helm, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed.2d 637, 651-653 for the proposition that lesser included offenses meant lesser in magnitude of punishment.

Therefore, the Board has failed to perform as it is required by the Regulations, the statutes and the clearly established law by the United States Supreme Court.

<u>FOURTH ELEMENT</u>

Because petitioner has not been released from prison within the terms established in the matrix for the uniformity on the sentences requirement, and his bargained crime of second degree murder has been increased to the greater offense of first degree murder, the damages he has suffered are obvious.  He has served in prison a term longer than the maximum term required by the uniformity on the sentences requirement for the crime he bargained for.

Because the Board has failed to consider the laws that were in existence when petitioner pleaded guilty to second degree murder and petitioner has served a term greater than the maximum term established by the uniformity on the sentences requirement due to the Board's failure to release him within the terms required by the matrix, the Board has breached the plea agreement petitioner struck with the prosecutor.

For the foregoing reasons petitioner requests specific performance that he be released from prison in a forthwith manner.

28

(a). Breach of the Implied Covenant of Good Faith and Fair Dealing.

The Board has breached the implied covenant of good faith and fair dealing

"California law recognizes implied covenant of good faith and fair dealing and certain contracts that neither party will do anything to deprive the other of benefit of contract." Cancellier v. Federal Dept. Stores, 672 F.2d 1312, 1318 (9th Cir. 1982), certiorari denied, 103 S. Ct. 131, 459 U.S. 859, 74 L.Ed.2d 113; McCullum v. XCare,Net Inc., 212 F. Supp.2d 1142, 1152 (N.D. Cal. 2002); Tilbury Constructors v. Compensation Ins., 40 Cal. Rptr.3d 392, 396 (Cal. App. 3 Dist. 2006); Fossom v. Palace (Waterland) LTD., 78 F.3d 1448,1454 (9th Cir. 1996); Redke v. Silvertrust, 6 Cal.3d 94, 100, 98 Cal. Rptr. 293, 296 (Cal. 1971).

"Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." Perdue v. Croker National Bank, 38 Cal.3d 913, 216 Cal. Rptr. 345, 352 (Cal. 1985); Traumann v. Southland Corp., 858 F.Supp. 979, 983 (N.D. Cal. 1994).

"There are at least two separate requirements to establish breach of the implied covenant; (1) benefits due under the policy must have been withhold; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Tilbury Constructors v. Compensation Ins., supra, 40 Cal. Rptr.3d at 397; Progressive West Ins. Co.v. Yolo County, 37 Cal. Rptr.3d 434, 447 (Cal. App. 3 Dist. 2005).

## REQUIREMENT ONE

Because the Board has failed to consider the laws that were in existence when petitioner bargained for a second degree murder crime and the Board has failed to release petitioner within the terms established in the matrix to achieve the uniformity on the sentences requirement, the Board arbitrarily has increased petitioner's second degree murder offense to the greater offense of first degree murder and in this manner the Board have deprived petitioner of the benefits he bargained for to be released within the terms established in the matrix. CCR § 2403 (c).

## REQUIREMENT TWO

### The reason for withholding petitioner's benefits are unreasonable.

The reason for withholding petitioner's benefit is unreasonable because the Board has been applying the uniformity on the sentences requirement in an unreasonable manner. Without regard as to how much time petitioner has served in prison and without considering the uniformity on the sentences requirement to find petitioner suitable for parole the Board unreasonable has found petitioner unsuitable for a parole release date based on some evidence it has found for the last 19 years in the commitment offense.

Relying on some evidence found on the commitment offense to find petitioner unsuitable for parole is unreasonable.

The Board first want to find petitioner suitable for parole and then it want to set his release date in accordance with the uniformity on the sentences requirement. But, because the Board has been finding some evidence on the convicted offense alone to find petitioner unsuitable for parole, and because the circumstances of the commitment offense will never change it is assumed the Board once it found some evidence on the commitment offense to find petitioner unsuitable for parole, it has turned petitioner's 15-years to life sentence into a life without the possibility of parole. Martin v. Marshall, 431 F. Supp.2d 1038, 1046 (N.D. Cal. 2006).

Example of applying the uniformity on the sentences requirement unreasonably.

If a prisoner is found suitable for a parole release date when he had served 30-years in prison, based on some evidence found on the commitment offense, then the Board use the Matrix to achieve the uniformity on the sentences requirement and set the prisoner's term to be 14-years (for example) this is unreasonable application of the uniformity on the sentences requirement.

### Example of unreasonableness.

Liber R. Andrade was convicted in 1982 of second degree murder and he was sentenced

to 15-years to life for the murder plus two years for the firearm use. On March 22, 19 1990 he was found suitable for parole and the Board set a June 1995 his release date. However, in May 1995, apparently without any cause, the Board rescinded Andrade's grant of parole. Since then the Board has provided Andrade with a series of parole suitability hearings without finding him suitable for parole. See In re Andrade, 46 Cal. Rptr.3d 317.

Therefore, Andrade has been in custody for 25-straight years and his term according to the matrix was 13-years with credits applied. Now after he has served another 12-years in prison and with more credits accumulated, when the Board find him again suitable fo parole and refors to the matrix to achieve the uniformity on the sentences requirement the term of Andrade will be less than 13-years.

Is not the Board applying the uniformity on the sentences requirement unreasonable? Because the Board has been applying the uniformity on the sentences requirement unreasonably, it has withheld petitioner's benefit (a term commensurate to his second degree murder conviction and in accordance with the uniformity on the sentences requirement).

Therefore, due to the unreasonable application of the uniformity on the sentences requirement the Board has breached the implied covenant of good faith and fair dealing.

The Court should accord an interpretation to a contract which is reasonable. Cal. Civil Code § 1643; People v. Haney, 207 Cal. App. 3d 1034, 1039, 255 Cal. Rptr. 276, 279(1989).

" Under California Law, Court must give reasonable and commonsense interpretation of contract consistent with parties's apparent intent." Congregation ETZ Chain v. City of Los Angeles, 371 F.3d 1122, 1126 (9th Cir. 2004).

The Court must give a reasonable interpretation as opposed to those that are unreasonable, or that would make the contract illusory. Barcellos and Wolfsen v. Westlands Water Dist., 849 F. Supp. 717, 721 (E.D. Cal. 1993), Motion denied, affirmed O'Neill v. U.S. 50 F.3d 677, certiorari denied, 116 S. Ct. 672, 516 U.S. 1028, 133 L.Ed.2d 521.

### PETITIONER WAS INDUCED TO PLEA GUILTY TO AN ILLUSORY CONTRACT.

(b)  Because petitioner has not been released within the terms established by the uniformity on the senteces requirement and due to it the Board has increased his crime to the greater crime of first degree murder, he was induced to plea guilty to an illusory second degree murder offense in violation of the Due Process Clause to the United States Constitution 14th Amendment. Marry v. Johnton, 467 U.S. 504, 509, 104 S. Ct. 2543, 2547 where the Court Held:

"If a defendant was not fairly appraised of its consequences, his guilty plea can be challenged under the due process clause. And when prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false promise, and hence his conviction cannot stand." Id.

"A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the Court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment)), misrepresentation (including unfulfilled or unfulfilable promises)." Id.

In California it is a misrepresentation to have a defendant plea guilty to a second degree murder offense because eventually with some evidence from the commitment offense his crime is increased to the greater offense of first degree murder amounting to an illusory contract.  This is what has happened to petitioner in violation of Dillon v. United States, 307 F.2d 445, 449 (9th Cir. 1962); Santobello v. New York, supra, 404 U.S. 257, 30 L.Ed.2d 427; Blackledge v. Allison, 431 U.S. 63, 52 L.Ed.2d 136.

Petitioner requests a specific performance of the plea agreement. That he be released immediately from prison because he has served more than the maximum term required by the uniformity on the sentences requirement for offenses of second degree murder. Santobello v. New York, supra, 404 U.S. at 263, 92 S. Ct. at 499; Blackley v. Terhune, supra, 441 F.3d 688, 699 (9th Cir. 2006); Brown v. Poole, 337 F.3d 1155, 1161-1162 (9th Cir. 2003).

"Elements requisite to relief by way of specific performance it is required that a lawfully contract be just, reasonable and sufficiently definite and certain inits terms to be enforced and supported by adequate consideration, petitioner has performed his side of the bargain, and promisor's failure to perform." Porporato v. devincenzi, 68 Cal. Rptr. 210, 213, 216 Cal. App.2d 670 (Cal. App. 1 Dist. 1968).

Because the Board has found some evidence on the commitment offense and it has failed to consider the uniformity on the sentences requirement to find petitioner suitable for parole, the Board has increased  petitioner's crime of second degree murder to the greater crime of first degree murder in violation of several of petitioner's federal constitutional rights. Faretta v. California, 422 U.S. 806, 818, 45 L.Ed.2d 562, 572.

1. The Board has breached the plea agreement petitioner struck with the prosecutor. Santobello v. New York, supra, 404 U.S. at 262, 92 S. Ct. 445, 30 L.Ed.2d 427.

2.  Due to the fact that petitioner has been punished in excess of the terms required by the uniformity on the sentences requirement, the Due Process Clause to the United States Constitution has been violated. 5th, 6th, and 14th Amendments. Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. Ct. at 2229; Whalen v. United States, 445 U.S. 684, 63 L.Ed.2d 715, 100 S. Ct. 1432, n. 4 (1980).

3.  By increasing petitioner's crime to the greater crime of first degree murder, the Board has violated petitioner's right to notice of every essential element of first degree murder offense. Stirone v. United States, 361 U.S. 212, 4 L.Ed.2d 252, n. 3, 80 S. Ct. 270 (1960); Russell v. United States, 369 U.S. 749, 765, 8 L.Ed.2d 240, 251 (1962).

4.  By increasing the crime the Board has violated petitioner's right to be informed about the nature of the charges against him. Henderson v. Morgan, 426 U.S. 637, 645, 49 L.Ed.2d 108, 114 (1976).

5.  By increasing the crime the Board has violated petitioner's right to a jury trial on the charges of first degree murder  and be found guilty beyond a reasonable doubt. This is due to the fact that only with some evidence found on the convicted offense the Board has increased petitioner's crime. In re Winship, 397 U.S. 358, 364, 25 L.Ed.2d 368, (1970); Apprendi v. New Yersey, 120 S. Ct. 2348, 2356-2357 (2000); Santobello v. New York, supra, 404 U. S. at 264, 92 S. Ct. at 500.

## GROUND FOURTH

IN VIOLATION OF THE DUE PROCESS CLAUSE TO THE UNITED STATES CONSTITUTION PETITIONER
WAS DEPRIVED OF THE RIGHT TO A FAIR NOTICE IN THAT A PORTION OF PENAL CODE § 3041
(a) WAS UNFORESEEABLY AND RETROACTIVELY OVERRULED BY JUDICIAL CONSTRUCTION.

In In re Rosenkrantz, 29 Cal. 4th 616, 128 Cal. Rptr.2d 104, 59 P.3d 174 (Cal. 2002);

and in In re Dannenberg, 23 Cal. Rptr.3d 417, 104 P.3d 783 (Cal. 2005) the California

Supreme Court overruled most of Penal Code § 3041 (a) and a portion of the following

regulations: Tit. 15 of CCR § 2401, 2402, and 2403. The effect of these overruled laws

has been that petitioner's second degree murder conviction has been increased to the

greater offense of first degree murder. This was in violation of Bouie v. City of

Columbia, 378 U.S. 347, 84 S. Ct. 1697 (1964) in that petitioner didn't receive a fair

warning as to the nature of his crime and or as to the crime of first degree murder.

### Principles of the Indeterminate Sentence Law (ISL).

The principle of the ISL does not focuses on the crime or on the uniformity of the

senteces but the Board focuses on the rehabilitation of the prisoner.  The Courts have

held: "The punishment should be fitted to the perpetrator of the crime, not merely to

the crime." Williams v. New York (1949) 337 U.S. 241, 247, 69 S. CT. 1079, 1083,

93 L.Ed. 1337, 1342; People v. Morse, 388 P.2d 33, 36 Cal. Rptr. 201, 207-208, fn. 8

(Cal. 1964); In re Minnis, 7 Cal.3d 639, 644, 102 Cal. Rpre. 749, 752 (Cal. 1972);

In re Troglin, 51 Cal. App.3d 343, 440, 124 Cal. Rptr. 234 (Cal. App. 1 Dist. 1975).

"In California in enacting the Indeterminate Sentence Law the Legislature abandoned
the ancient notion of categorical punishment, the infliction of fixed terms for cer-
tain crimes, and substituted the indeterminate sentence, leaving to the Adult Autho-
rity the judgment of period of incarceration. The Authority didn't fix that period
pursuant to a formula of punishment, but in accordance with the adjustment, and
social rehabilitation of the individual analyzed as a human composite of intelectual,
emotional and genetic factors. People v. Morse, supra, 60 Cal.2d 631, 642-643,
36 Cal.Rptr. 201, 207-208; In re Stanworth, 33 Cal.3d 176, 182 (Cal. 1982).

However, because under the ISL the Adult Authority (AA) was not fixing the prisoners' terms pursuant to a formula of punishment but it fixed it in accordance to its own judgment, the AA was abusing its discretion and was fixing the prisoners's terms disproportionate to the crime they were convicted of or it was not fixing their terms at all. See In re Minnis, supra, 7 Cal.3d 639, 102 Cal. Rptr. 749; In re Rodriguez (1975) 14 Cal.3d 639, 122 Cal. Rptr. 552; In re Lynch, 8 Cal.3d 410, 105 Cal. Rptr. 217 (1973); In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 435.

In Dannenberg the California Supreme Court conceded that under the ISL the AA was arbitrarily applying the law by exposing some prisoners to excessive punishments for their individual crimes that the Parole Authority was given virtually unbriddle statutory power. In re Dannenberg, supra, 23 Cal. Rptr.3d at pages 434-436, 441-442.

Because now the Board must fix the terms in accordnace with the uniformity on the sentences requirement, it is vested with less statutory power than its Board's predecessors.

From 1917 through 1976, the Adult Authority (the Board's predecessor) was vested with considerably more discretion over term and parole decisions under the Indeterminate sentencing law than the Board now wields under the determinate sentencing law. In re Ramirez, 114 Cal. Rptr.2d 381 (Cal. App. 1 Dist. 2001). Now the Board must achieve the uniformity on the sentences requirement by setting the terms in accordance to the terms established in the matrices and in a reasonable manner.

In response to the AA's discretionary abuses, in 1976 the Legislature enacted the Uniform Determinate Sentencing Act (UDSA). Also known as Determinate Sentence Law (DSL). Therefore, in 1978 following the passage of the DSL new Parole Regulations and the requirement of uniformity on the sentences were enacted. Penal Code § 3041 (a); In re Stanworth, supra, 33 Cal.3d at 182-183, 187 Cal. Rptr. at 787; In re Duarte, 143 Cal. App.3d 943, 948, 193 Cal. Rptr. 176, 179 (Cal. App. 3 Dist. 1983); In re Seabock, 140 Cal. App.3d 29, 40, 189 Cal. Rptr. 310, 317 (Cal. App. 1 Dist. 1983).

In In re Stanworth, supra, the California Supreme Court summarized the differences
between the ISL and the DSL in the following manner:

"The new regulations set a longer range of base terms for first degree murder and
require the imposition of set additional terms for particular enhancements unless
deviation from the norms is especially justified. Moreover, the new rules generally
reflect an attempt to achieve uniformity and stress the criminal activities of the
inmate rather than any social or personal factors." In re Stanworth, supra, 33 Cal.3d
at 186, 187 Cal. Rptr. at 789.

Penal Code § 3041 (a); CCR § 2401; and the Sentencing Rules of the Superior Court
former rule 410 (g) and new rule 4.410 (a0(7) require uniformity on the sentences for
offenses of similar gravity and magnitude with respect to threat to the public.

Title 15 of CCR § 2401 requires the Board to consider CCR § 2403 (c) to find the
inmate suitable for parole and to set his parole release date.

The DSL also requires the Board to consider all relevant, reliable information avai-
lable  to the panel in determining suitability for parole. That circumstances which
taken alone may not firmly establish unsuitability for parole that may contribute to
a patern which results in a finding of unsuitability. CCR § 2402 (b); In re Seabock,
supra, 140 Cal. App.3d at 39, 189 Cal. Rptr. at 316.

Second degree murder carrying 15-years to life, first degree murder carrying 25-years
to life, and other crimes carrying life sentences with possibility of parole that were
committed after November 8, 1978, were committed under the UDSA. Therefore, petitioner
committed the crime under the DSL which requires uniformity on the sentences and the
consideration of the matrices to achieve the uniformity requirement.

The California Supreme Court in construing Penal Code 3041 overruled a portion of
Penal Code § 3041 (a) and several regulations which were required to be considered to
find petitioner suitable for a parole release date. These overruled laws have had the
effect of increasing petitioner's second degree murder offense to the greater offense
of first degree murder by finding some evidence on the commitment offense. Due to these
overruled laws, several of petitioner's federal constitutional rights have been violated.

36

Specifically a violation of the right to a fair warning as it is established in
Bowie v. City of Columbia, supra, 378 U.S. 347, 84 S. Ct. 1697 and other Federal
Constitutional Rights have been violated. See Faretta v. California, supra, 422 U.S.
806, 818, 45 L.Ed.2d 562, 572, 95 S. Ct. 2525.

In Dannenberg, supra, 23 Cal. Rptr.3d at 434-443, n. 15 and n. 16 the California
Supreme Court overruled Penal Code § 3041 (a) regarding the uniformity on the senten-
ces requirement and it overruled CCR § 3041 and 2403 regarding the uniformity on the
sentences requirement.  The Court held that the Board needs not consider the uniformity
on the sentences requirement, needs not consider the matrices to achieve the uniformity
on the sentences requirement and that without considering anything else the Board can
increase second degree murder crimes to the greater offense of first degree murder if
the Board finds some evidence on the convicted offense. See also In re Rosenkrantz,
supra, 29 Cal. 4th 616, 683, 128 Cal. Rptr.2d 104, 161.

The circumstances of the commitment offense established in CCR § 2402 (c)(1) and the
factors need not be considered neither the rehabilitation of the prisoner needs not be
considered to find the inmate suitable for parole as long as the Board finds "some
evidence" in the commitment offense to find the prisoner unsuitable for   parole.

The California Supreme Court construed Penal Code § 3041 in the following manner:
That the District Attorney convicts the defendant of second degree murder beyond a
reasonable doubt and then the Board with "some evidence" found in the convicted offense
increase the crime to the greater offense of first degree murder.

In Superintendent v. Hill, 472 U.S. 445, 86 L.Ed.2d 358, 105 S. Ct. 2768 and In re
Powell, 45 Cal.3d 894, 904, 248 Cal. Rptr. 431, 437, the Courts adopted the "some
evidence" standards of proof to Administrative Evidence to prove the conduct of the
prisoners after they were convicted rather than adopting the "some evidence" standards
of proof found in the convicted  offense to increase the crime to the greater offense.
Increasing the crime with some evidence found on the convicted offense is not an admi-
nistrative misconduct.

There is a great difference between increasing the crime with some evidence from the conduct of the prisoner after he was convicted and increasing the crime with some evidence found on the same convicted offense. This cannot be done without violating several of petitioner's federal constitutional rights.

Without any limitation the Board can find some evidence in the convicted offense to find the prisoner unsuitable for parole. The way this is done from the first time the Board finds some evidence on the convicted offense, it immediately turns a life sentence with possibility of parole into a sentence of life without the possibility of parole. See Martin v. Marshall, 431 F. Supp.2d 1038,1046. And no matter if the prisoner is a model prisoner he always will be found unsuitable for parole and he will be unable to change the circumstances of the commitment offense and be will no be able to get his release on parole. This practice of the California law is contrary to the law which requires the prisoner to be rehabilitated before he be released on parole. This is due to the fact that when rehabilitation is required the prisoner has the obtion to rehabilitate or no to rehabilitate.

Therefore, the way the California Supreme Court construed Penal Code § 3041 violates the well recognized principle of different degrees of criminal culpability; It violates the Federal Due Process Clause because petitioner has been deprived of the requirement of Penal Code §§ 1192.1 and 1192.2 and the case law which state that when a defendant pleads guilty to a lesser included offense his benefit will be a lesser punishment. Carter v. U.S., 530 U.S. 255, 120 S. Ct. 2159, n. 2.

Therefore, the way California Supreme Court construed Penal Code § 3041 is contrary to the principle of lesser included offense and to the lesser punishment that is required when a defendant pleads guilty to a lesser included offenses. And it was construed in a manner that the Board apply it in an oppressive, abussive, capricious and arbitrary manner.

38

The construction of Penal Code § 3041 by the California Supreme Court that if the Board finds some evidence on the commitment offense it can find the prisoner unsuitable for parole is contrary to the clearly established law by the United States Supreme Court which has held that: "The Board shall focuses on the rehabilitation of the prisoner rather than on the crime he committed to find him suitable for parole" Williams v. New York, supra, 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L.Ed.2d 1337, 1342; Greenholtz v. Inmates of Nebraska Penal Corr., 442 U.S. at 10, 99 S. Ct. at 2105. The Court also requires that the Board to make its decision on a discretionary assessment of multiplicity of imponderables, rather than on the finding of some evidence on the convicted offense.

Because Rosenkrantz and Dannenberg changed the law by requiring the Board to find the prisoner unsuitable if the Board finds some evidence on the convicted offense and by overruling the uniformity on the sentences requirement, Rosenkrantz and Dannenberg shall not be applied to petitioner because the the established law hold: "When a defendant waives his state court remedies and admits his guilt, he does so under the law then in existence." McMann v. Richardson, 397 U.S. 759, 774, 25 L.Ed.2d 763, 775, 90 S. Ct. 1441 (1970).

When petitioner pleaded guilty the decisions of the Courts and the State's Statutes held that: Upon a plea of guilty to a crime divided into degree the defendant cannot be punished for a higher degree of the crime"/ Penal Code §§ 1192.1, 1192.2; People v. West, 3 Cal.3d 595, 610, 91 Cal. Rptr. 385, 394 (Cal. 1970); In re Troglin, 51 Cal. App.3d 434, 438, 124 Cal. Rptr. 234, 237 (Cal. App. 1 Dist. 1975); Santobello v. New York, supra, 404 U.S. 257, 92 S. Ct. 495.

Therefore, by changing the rules in the middle of the game to increase petitioner's crime of second degree murder to the crime of first degree murder violates the Due Process Clause to the United States Constitution in that it violates petitioner's right to a fair warning. Bouie v. Columbia, supra, 378 U.S. 347, 84 S. Ct. 1697.

39

## REQUEST FOR RELIEF

(1).  Because the Board has focused on the convicted offense to find some evidence to find petitioner unsuitable for parole rather than focuses on the rehabilitation of petitioner, petitioner requests the uniformity on the sentences requirement be achieved in a reasonable manner and that the matrix to achieve the uniformity on the sentences be considered to find petitioner suitable for  parole and to set his parole release date. and that petitioner be immedaitely released from custody because he has served in prison a term 7-years longer than the maximum term required by the uniformity on the sentences requirement.

(2).  Because the California Supreme Court construed Penal Code § 3041 in violation of several of petitioner's federal constitutional rights, petitioner requests In re Rosenkrantz, supra, 29 Cal. 4th 616 and In re Dannenberg, supra, 23 Cal. Rptr.3d 417 be declared unconstitutional as applied to petitioner.

(3). Petitioner requests specific performance.

   Because petitioner is a rehabilitated prisoner and he has served in prison a term 7-years longer than the maximum term established by the uniformity on the sentences requirement, he requests specific performance and he be immediately released from custody.


   I, Artemio Arroyo, swear under penalty of perjury that the foregoing is true and correct. Signed at Soledad, Ca. on  June 12, 2007.


                                        Artemio Arroyo

## PROOF OF SERVICE BY MAIL

### (C.C.P.  §§1013A, 2015.5)

STATE OF CALIFORNIA )
                                      ) SS.
COUNTY OF MONTEREY )

I, Artemio Arroyo_____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I   am/am not   a party to the within action.

My   business/residence   address is P.O. Box 689, Soledad, California, 93960-0689.

On June 12, 2007_____, 20 07_____, I served the foregoing:

A HABEAS CORPUS PETITION_____

_____

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

UNITED STATES DISTRICT COURT                DEPARTMENT OF JUSTICE
FOR THE NORTHERN DISTRICT OF CALIFORNIA     Office of Attorney General
450 Golden Gate Avenue, Box 36060           455 Golden Gate Ave., No. 11000
San Francisco, Ca. 94102                    San Francisco, Ca. 94102-3664

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this Twelve____ day of June_____, 20 07_____, at

Soledad, California.

/S/ _Artemio A Arroyo_

Artemio Arroyo