# EXHIBIT  A

**BOARD OF PRISON TERMS**    FORWARD TO INMATE/PAROLEE STATE OF CALIFORNIA
**OFFICE OF POLICY AND APPEALS**
**DECISION ON APPEAL**

Your appeal was received by the Board on October 3, 2003.

___

**Decision you appealed:**

Life parole consideration hearing of February 19, 2003. Parole denied. Next hearing in 2 years.

___

**Reasons for your appeal:**

1. The prisoner contends that he did not receive any document regarding the decision.
2. The prisoner contends that he did not receive a copy of the transcript of the hearing.
3. The prisoner contends that the Board has upgraded his conviction to that of a first degree murder.
4. The prisoner contends that the decision violates his plea agreement.
5. The prisoner contends that pursuant to Penal Code § 3041(a) the Board must set a release date.

___

**Decision by the Board on this appeal:**

[ X ] Denied        [ ] Granted        [ ] Dismissed or no action
(No – the decision      (Yes – the decision     (The appeal will not
stays the same)         will be changed)        be looked at)

___

| Name | _(signature)_ | BOARD PANEL Title Commissioner | Date | 6-8-04 |
| Name | _(signature)_ | BOARD PANEL Title Commissioner | Date | 6-8-04 |

**CDC Staff to assist in reviewing appeal decision**    Yes [ ]    No [ X ]

___

| NAME | CDC # | PRISON/REGION | DATE |
| ARROYO, Artenio | C-20149 | CTF- N | JUN 08 |
| | | WB-330U | |

PFF

EXHIBIT A 1

BPT 1041 (REV. 01/02)

BOARD OF PRISON TERMS                                        STATE OF CALIFORNIA
Page 2: DECISION ON APPEAL

## REASONS FOR DECISION

### Introduction

Title 15 of the California Code of Regulations (15 CCR), § 2400 et seq., sets forth parole suitability criteria and procedures for life prisoners who committed murder on or after November 8, 1978. Prisoner rights are specified at 15 CCR §§ 2245 - 2256. Appeals from parole consideration hearings are governed by 15 CCR §§ 2050-2057.

### Decision on Appeal

1. The prisoner contends that he did not receive any document regarding the decision.

**Appeal Denied:** The prisoner is mistaken. On page 73, lines 9 and 10 of the hearing transcript, the presiding panel member provides the prisoner with his copy of the tentative decision (BPT 1005).

2. The prisoner contends that he did not receive a copy of the transcript of the hearing.

**Appeal Denied:** Board records reveal that the prisoner's copy of the transcript of the proceedings was mailed to the California Training Facility (where the prisoner is housed). It is the responsibility of the Classification and Parole Representative to forward that copy to the prisoner. Apparently there was a delay of several months due to institution personnel not forwarding the a copy of the transcript to the prisoner. The prisoner needs to address this issue through his institution, as the Board has no control over the mail service at the prisoner's institution. The Board, therefore, appropriately waived the time limits for the prisoner to file his appeal. The Appeals Unit finds that the delay, although unfortunate, does not warrant a new hearing or the overturning of the decision.

3. The prisoner contends that the Board has upgraded his conviction to that of a first degree murder.

**Appeal Denied:** The panel is well aware of the prisoner's legal status. However, the primary consideration of any hearing panel when considering a prisoner for parole, is public safety (Penal Code § 3041(b)). The nature and gravity of the life offense is an important consideration, however, the prisoner's overall institutional adjustment, mental health and program participation are also important considerations when determining factors of suitability.

Penal Code § 1168(b) provides the Board with the authority to set the term or the duration of the period of imprisonment. Also, in the case of *In re Rodriguez* (1975) 14 Cal.3d 639, 651-652, the court said that it followed *People* v. *Wingo* (1975) 14 Cal.3d 169, in that a prisoner who had a maximum term which may be disproportionate to his individual culpability has a right to have his term fixed at a number of years that is proportionate to his offense. The maximum term for the prisoner's offense (i.e., life) is not disproportionate to his culpability. Therefore, he is not entitled to have his term fixed prior to a finding of suitability for parole. Board rules regarding its pre-suitability procedures were upheld in *In re Seabock* (1983) 140 Cal.App.3d 29. (Emphasis added)

ARROYO, Artenio    C-20149

BPT 1041 (REV. 01/02)

EXHIBIT A 2

JUN 0 8 2004

**BOARD OF PRISON TERMS**                                    STATE OF CALIFORNIA
Page 3: DECISION ON APPEAL

4. The prisoner contends that the decision violates his plea agreement.

**Appeal Denied:** On matters of parole suitability the hearing panel is only interested in the facts of the case. The fact that the prisoner may have entered into a plea agreement is only one of those facts. The prisoner appears to be implying that the fact of a plea bargain forecloses the panel from going into the facts underlying the plea bargain and the facts of the case where certain findings are not made. All relevant information must be considered which bears on parole suitability.

In the prisoner's case, the Board must presume that the prisoner is serving a standard life sentence for second degree murder until a court tells the Board and the Department of Corrections that some other term is to be served.

5. The prisoner contends that pursuant to Penal Code § 3041(a) the Board must set a release date.

**Appeal Denied:** The primary consideration of the panel in setting a parole release date is the consideration of public safety (see Penal Code § 3041(b)). The elements upon which that consideration is based are vast. The discretion to weigh these factors is vested in the Board and, therefore, in the hearing panel. Even an "amazing in-prison record" does not, in and of itself, demonstrate what the prisoner's behavior might be out of prison or mandate a finding of suitability.

Penal Code § 3041 (b) provides as follows: "The panel or Board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."

Board regulations provide in part as follows (Title 15 CCR § 2402):

   (a) Regardless of the length of time served, <u>a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released</u> from prison.

   (b) All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before during, and after the crime; past and present attitude toward the crime; and conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. <u>Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.</u> (Emphasis added)

The Board's discretion in determining parole suitability has been described in the California Supreme Court case of *In re Powell* ((1988) 45 Cal.3d 894) as follows (page 902):

JUN 0 8 2004

EXHIBIT A 3

BOARD OF PRISON TERMS                                    STATE OF CALIFORNIA
Page 4: DECISION ON APPEAL

> The Board's discretion in parole matters has been described as 'great' (Falk, *The Supreme Court of California* 1971-1972 (1973) 61 Cal. L. Rev. 273, 427-428) and 'almost unlimited' (Note, *The California Adult Authority* (1972) 5 U.C. Davis L. Rev. 360, 368, 376-377). The Board's exercise of its broad discretion 'involves the deliberate assessment of a wide variety of individualized factors on a case-by-case basis, and the striking of a balance between the interests of the inmate and the public.' (*Fain I, supra*, 65 Cal.App.3d at 389.)

In summary, the decisions of the Board on life parole consideration are essentially subject to the discretion of the Board and are only subject to being overturned if they are completely arbitrary and capricious and based on no credible evidence whatsoever. The prisoner by his appeal seeks to substitute his judgment for that of the Board. The law of this state puts the responsibility for that judgment in the hands of the Board that in turn entrusts it to the panel that hears his case.

The hearing panel considered the testimony of the prisoner and the statements of his attorney and all other persons who appeared at the hearing along with all available written documentation before finding the prisoner unsuitable for parole. In the prisoner's case that panel clearly documented its reasons in determining that the prisoner would pose an unreasonable risk to the public if released (HT pp.66-73). The Appeals Unit finds that there are clearly sufficient findings to support a finding of unsuitability under Penal Code § 3041(b) and Title 15 CCR § 2402(c). The prisoner has presented no information that would invalidate the reasons for denial and the finding of unsuitability.

The Appeals Unit has reviewed the finding of unsuitability by the hearing panel. It is its determination that the hearing panel acted properly, that the applicable law and rules have been applied appropriately in this case and that the result reached is proper.

<u>Exhaustion of Remedies</u>

Since all grounds for appeal must be included in the same appeal (15 CCR § 2052(a) (2)), this decision is the final administrative decision on all issues from the decision in question. No further appeals or requests for review based on the issues from this decision will be accepted.

ARROYO, Artenio    C-20149                                    JUN 0 8 2004

BPT 1041 (REV. 01/02)                    EXHIBIT A 4

# BARCLAYS CALIFORNIA CODE OF REGULATIONS

Register 2004, No. 16          CALIFORNIA REGULATORY CODE SUPPLEMENT          April 16, 2004

# DIGEST OF NEW REGULATIONS

## CALIFORNIA REGULATORY CODE SUPPLEMENT DIGEST

Managing Editor: Jane O'Brien

Principal Editors: Kathryn Ayres, Ruth Lafler

Senior Editors: Michael Christensen, Patricia Mullaly

### OFFICIAL PUBLICATION

*Barclays California Code of Regulations* and *California Regulatory Code Supplement* are official publications of the State of California published under the direction of the California Office of Administrative Law, 300 Capitol Mall, Suite 1250, Sacramento, CA 95814, (916) 323-6225. Pursuant to title 17 of the United States Code, regulations of agencies, boards, commissions and departments of the State of California become matters of public domain when approved and filed with the Secretary of State. The compilation, styling, pagination, indexing, and editorial additions to *Barclays Code* and *Supplement* by the publisher's staff are copyrighted by West Group. All rights are reserved.

### SUBSCRIPTION INFORMATION

Barclays complete 38-volume *Code* may be purchased in printed form, microfiche or CD-ROM. Update services are available for all media. For user convenience, Barclays printed *Code* and update services are available for selected subjects to meet specific user needs. For a descriptive brochure and price list, please write: Barclays Official California Code of Regulations, P. O. Box 2006, San Francisco, CA 94126. FOR FASTER SERVICE, please call: 1-800-888-3600.

*The most comprehensive index available for the California Code of Regulations*

### THE MASTER INDEX

- Alphabetical by subject, with up to 4 levels of information
- Fully cross-referenced in legal and lay terms
- More than 148,329 references
- More than 13,050 cross-references
- Newly revised Statutes – Regulations table
- Only $408 (plus shipping and handling) or $648 for an annual subscription (2 issues yearly)

ORDER TODAY!
CALL 800-888-3600

## SUMMARIES OF NEW REGULATIONS

For subscribers to the amendment service for:
Title 15. Crime Prevention and Corrections
Division 2. Board of Prison Terms

Includes all amendments to regulations approved by the Office of Administrative Law and filed with the Secretary of State for the period 4/12/2004 through 4/16/2004.

### Title 15

*Prison Terms, Board of*

Emergency revisions to regulations governing administrative appeals from parole hearings

Summary: The Board of Prison Terms has made emergency revisions to regulations governing appeals from parole hearings.

This action eliminates administrative appeals procedures that duplicate the judicial processes available in state and federal courts. The revisions also provide that appeals under the American With Disabilities Act must be decided within thirty days in accordance with recent legislation. In addition, the regulations implement a grievance procedure for the processing of complaints of denials for requests for accommodations. The prisoner or parolee may request help from a departmental or board employee or other party in filing the grievance.

Regulatory Action: Emergency regulations. Changes affect title 15, sections 2041, 2050, 2051, 2052, 2054, 2055, 2056, 2057, 2072, 2073, 2074, 2251.5 and 2701.

Filed: 4/15/2004. Effective: 5/1/2004. OAL File No.: 04–0405–03

Agency Contact: Lori Manieri (916) 445–5277

EXHIBIT A 5

FILED
SUPERIOR COURT-STOCKTON.

05 JAN 13 AM 10: 19

ROSA JU~~~~~~
Ma~~~~~~
BY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

In the Matter of the Petition of

ARTEMIO MENDEZ ARROYO

For Writ of Habeas Corpus.

CASE NO.  SC 030688A

ORDER

TO: ARTEMIO MENDEZ ARROYO, Petitioner

On December 14, 2004, Petitioner filed a petition for a Writ of Habeas Corpus with this Court.  With good cause appearing therefor, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus is **denied** for the reasons indicated:

REASON:  Petitioner was convicted of second degree murder in 1980.  In February of 2003, the Board of Prison Terms (BPT) denied Petitioner parole.  Petitioner now challenges the BPT's decision.

Petitioner asserts three grounds for his position that the BPT's action is illegal and unconstitutional and therefore, he is being unlawfully confined.  They are:  1) The BPT's decision is not supported by any evidence; 2) The BPT's decision breaches the plea agreement reached insofar as Petitioner is being incarcerated for a period of time longer than that indicated; 3) The BPT's denial is an infliction of cruel and unusual punishment.

### Whether the BPT's decision is supported by any evidence

Judicial review of a parole denial "is confined to a reexamination and consideration of the administrative record before the BPT. ... A habeas proceeding is in the nature of a collateral attack ' " and [an order] that is collaterally attacked carries with it a presumption of regularity. ... In the absence of any such evidence, we must presume the [BPT] properly performed [its] review function within the constitutional and statutory framework." *In re Johnny Arafiles* (1992) 6 C.A.4th 1467 @ 1478.

Title 15 of the California Code of Regulations, section 2402 provides the guidelines for parole consideration.  Circumstances tending to show unsuitability are listed and include consideration of the commitment offense and whether the crime was committed in a heinous or cruel manner and whether the motive for the crime was

-1-

EXHIBIT A 6

trivial in relation to the offense.   Circumstances tending to suitability include motivation for the crime, plans for future and institutional behavior. The importance attached to any circumstance or combination of circumstances "is left to the judgment of the panel."

The record reflects that the BPT denied Petitioner parole for the following reasons:

1.   The offense was carried out in a cruel manner and involved multiple victims.
2.   The motive for the crime was trivial in relation to the offense.
3.   Petitioner has been convicted of other crimes since the commitment offense.
4.   In his psychological evaluation, dated December 2002, the violence potential for Petitioner was found to be slightly higher than the average citizen in the community. Petitioner's counselor reported that Petitioner would pose a moderate degree of threat to the public.
5.   Petitioner presented no plans for parole with regard to Mexico.

Thus, there is "some" evidence which supports the BPT's decision to deny parole.

It is well-settled that discretion in a parole matter must be exercised in good faith. The California Supreme Court recognizes that "a prisoner not only has a right to apply for parole, but is entitled to have his application 'duly considered' ...[and] due consideration means an examination of the inmate's institutional conduct, the nature of his offense, his age, his prior associations, his habits, inclinations and traits of character, the probability of his reformation, and the interest of public security." *In re Sturm* (1974) 11 C.3d 258, 268.

As outlined above, the record reflects that the BPT gave Petitioner's request for parole "due consideration."

## Conclusion

For the reasons set forth above, Petitioner has failed to set forth a prima facie case for habeas corpus relief. *In re Bower* (1985) 38 C.3d 865; *People v. Jackson* (1980) 28 C.3d 264. Accordingly, the petition is DENIED as to all issues raised.

Date:    JAN 1 3 2005

_____
JUDGE OF THE SUPERIOR COURT

STEPHEN G. DEMETRAS

EXHIBIT A 7

FILED
SUPERIOR COURT-STOCKTON

05 JAN 13  AM 10: 19

ROSA JUNQUERO, CLERK

BY _Maureen Swayne_ DEPUTY

1

2

3

4      SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

5

6   In the Matter of the Petition of        )
                                             )
7      ARTEMIO MENDEZ ARROYO                 )      CASE NO.  SC030688A
                                             )
8                                            )
   For Writ of Habeas Corpus                 )      CERTIFICATE OF SERVICE
9                                            )      BY MAIL
                                             )
10  _____

11      I, the undersigned, declare that I am a deputy of the Clerk of the Superior Court

of San Joaquin County, State of California, and not a party to the within action.  On

12  _____JAN 1 4 2005_____, I deposited in the United States Post Office at Stockton,

13  California, true and correct copies of the Order regarding the above-entitled petition for

writ of habeas corpus, a printed copy of which is hereto attached and made a part

14  hereof, one copy of which is addressed to each of the following named persons at the

15  following named addresses:

16
ARTEMIO MENDEZ ARROYO, C-20149
17  P.O. Box 705-WB-330

18  Soledad, CA 93960

19
        I further declare that each of said copies so mailed and addressed was enclosed
20  in a separate envelope, sealed, with the postage thereon fully prepaid.

21      I declare under penalty of perjury that the foregoing is true and correct.

22      Executed at Stockton, California on the date above specified.

23

24                                    _____
                                         Deputy Court Clerk
25

26

27

28

EXHIBIT A 8

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

# FILED

### MAY 1 2 2005

COURT OF APPEAL - THIRD DISTRICT
DEENA C. FAWCETT

BY_____ Deputy

In re ARTEMIO MENDEZ ARROYO on Habeas Corpus.

C049680
Monterey County
No.

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated: May 12, 2005

SIMS, Acting P.J.

-----------------------------------

cc: See Mailing List

Exhibit A 9

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

MAILING LIST

Re:    In re Artemio Arroyo on Habeas Corpus.
       C049680
       Monterey County
       No.

Copies of the attached document have been sent to the individuals checked below:

Artemio Mendez Arroyo
C-20149
Correctional Training Facility
P.O. Box 705
Soledad, CA  93960


Office of the State Attorney General
P.O. Box 944255
Sacramento, CA  94244-2550

FILED
SUPERIOR COURT-STOCKTON

06 MAR -7 PM 3: 17

ROS. ~~~~~~~. CLERK

BY _____
DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

In the Matter of the Petition of

ARTEMIO MENDEZ ARROYO

For Writ of Habeas Corpus.

CASE NO.  SC 030688A

ORDER

TO: ARTEMIO MENDEZ ARROYO, Petitioner

On December 14, 2004, Petitioner filed a petition for a Writ of Habeas Corpus with this Court.  With good cause appearing therefor, the Petition for Writ of Habeas Corpus was denied.  On January 18, 2006, Petitioner filed this second petition for a Writ of Habeas Corpus.  This second and successive petition is hereby denied for the reasons indicated:

**REASON**:  Petitioner was convicted of second degree murder in 1980.  In February of 2003, the Board of Prison Terms (BPT) denied Petitioner parole.  In the December, 2004 petition, Petitioner challenged the BPT's decision asserting that the BPT's action was illegal and unconstitutional.  This Court issued a two page order outlining the legal guidelines for such a decision as well as the basis for the decision in Petitioner's case.  This Court concluded that habeas corpus relief was not warranted.

Petitioner is making the same assertion in this January 2006 petition.

Before a state court will consider the merits of a second or successive habeas petitions, the Petitioner must justify the piecemeal presentation of habeas claims.  *In re Clark* (1993) 5 C.4th 750, 774.  No such justification has been presented.  Accordingly, Petitioner has failed to set forth a prima facie showing to warrant habeas corpus relief as to the parole issue.  *In re Bower* (1985) 38 C.3d 865, 872.

Accordingly, the petition is denied.

Date: 3/6/06

JUDGE OF THE SUPERIOR COURT
RICHARD J. GUILIANI

-1-   Exhibit A 10

FILED
SUPERIOR COURT-STOCKTON

06 MAR -7 PM 3: 17

ROSA JUN JESO. CLERK

BY _____
DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

In the Matter of the Petition of                    )
                                                     )
                                                     )      CASE NO.  SC 030688A
       ARTEMIO ARROYO                                )
                                                     )
                                                     )
For Writ of Habeas Corpus                            )      CERTIFICATE OF SERVICE
                                                     )      BY MAIL
                                                     )

     I, the undersigned, declare that I am a deputy of the Clerk of the Superior Court
of San Joaquin County, State of California, and not a party to the within action.  On
_____MAR 0 8 2006_____, I deposited in the United States Post Office at Stockton,
California, true and correct copies of the Order regarding the above-entitled petition for
writ of habeas corpus, a printed copy of which is hereto attached and made a part
hereof, one copy of which is addressed to each of the following named persons at the
following named addresses:

ARTEMIO ARROYO, C-20149
Post Office Box 689   FW-259
Soledad, CA 93960

     I further declare that each of said copies so mailed and addressed was enclosed
in a separate envelope, sealed, with the postage thereon fully prepaid.
     I declare under penalty of perjury that the foregoing is true and correct.
     Executed at Stockton, California on the date above specified.

_____
Deputy Court Clerk

Exhibit A 11

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

FILED

APR - 6 2006

COURT OF APPEAL - THIRD DISTRIC
DEENA C. FAWCETT
BY_____ Deput

In re ARTEMIO ARROYO on Habeas Corpus.

C052242
Monterey County
No.

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated: April 6, 2006

SIMS, Acting P.J.

------------------------------------

cc: See Mailing List

Exhibit A 17

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

MAILING LIST

Re:     In re Artemio Arroyo on Habeas Corpus.
        C052242
        Monterey County
        No.

Copies of the attached document have been sent to the individuals checked below:

Artemio Arroyo
C-20149
Correctional Training Facility
P.O. Box 689
Soledad, CA  93960

Office of the State Attorney General
P.O. Box 944255
Sacramento, CA  94244-2550

Monterey County Superior Court
240 Church Street, Rm. 320
Salinas, CA  93901

S142824

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ARTEMIO ARROYO on Habeas Corpus

Petition for writ of habeas corpus is DENIED.

SUPREME COURT
**FILED**

NOV 2 9 2006

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE
Chief Justice

# EXHIBIT B

# In the Superior Court of the State of California

## in and for the County of <u>SAN JOAQUIN</u>

# Abstract of Judgment

## Commitment to State Prison

Dept. No. 2          Case No. 30688                          Present:

The People of the State of California

Hon. <u>JAMES P. DARRAH</u>
**Judge of the Superior Court**

vs.

<u>Kenneth Meleyco</u>
**Prosecuting Attorney**

ARTEMIO MENDEZ ARROYO

<u>Jeff Hirschfield</u>
**Counsel for Defendant**

Defendant.

This certifies that on the <u>24th</u> day of <u>June</u>, 19<u>80</u> judgment of conviction of the above-named defendant was entered as follows:

(1) In Case No. <u>30688</u> Count No. <u>I</u> he was convicted by <u>court</u>; on his plea of <u>guilty</u>
(court or jury)

(guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of insanity)

of the crime of <u>Murder in the Second Degree</u>

(designation of crime and degree if any, including fact that it constitutes a second subsequent conviction of same offense if that affects the sentence.)

in violation of <u>Section 187 of the Penal Code</u>

(reference to Code or Statute, including Section and Subsection thereof, if any violated)

with prior felony convictions as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|------------------|-------|-------------|
|      |                  |       |             |
|      |                  |       |             |
|      |                  |       |             |
|      |                  |       |             |
|      |                  |       |             |

Defendant has been held in jail custody for <u>375</u> days as a result of the same criminal act or acts for which he has been convicted.    charged with being

Defendant <u>was not</u> armed with a deadly weapon at the time of his commission of the offense or a concealed deadly weap-
(was or was not)

on at the time of his arrest within the meaning of Sections 969c and 3024 of the Penal Code.

~~Defendant was or was not armed with a deadly weapon at the time of his commission of the offense within the meaning of Sections 969c and 3024 of the Penal Code.~~
(was or was not)

~~Defendant used or did not use a firearm in his commission of the offense within the meaning of Sections 969d and 12022.5 of the Penal Code.~~
(used or did not use)

(Repeat foregoing with respect to each count of which defendant was convicted.)

ABSTRACT OF JUDGMENT

EXHIBIT B 1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN
HONORABLE JAMES P. DARRAH _____ Judge

PEOPLE OF THE STATE OF CALIFORNIA
vs.

PROBATION OFFICER'S REPORT

No. 30688
A-26198

ARTEMIO MENDEZ ARROYO          Defendant

AKA ꞉ꞇꞇ "Tato" _____ Ethnic __Mexican__

Sex __Male__ DOB __6/6/62__ Age __17__ Birthplace __Mexico__ Citizen __No__

Address __1363 Hurd Road, #6, Lodi, California__

Marital __Common-law__ No. of Dep. __1__ Occupation __Farm Laborer__

Employer __N/A__ Income __N/A__ Source __N/A__

D.L. No. __Unknown__ S.S. No. __Unknown__ C.I.I. No. __N/A__

FBI No. __N/A__ LPD No. __N/A as to juveniles__

Prior Convictions __Ø__ Misdemeanors __Ø__ Felony __Ø__ Prob/Parole Viol. __Ø__

Offense(s) __A violation of Section 187 of the Penal Code, Second Degree__
__Murder, a felony__

Offense Date __9/10/79__ Arresting Agency __Lodi PD__ Date Arrested __9/11/79__

How Convicted __Plea of Guilty__ Accomplices __Jesus Hernandez, Bennie Barraza,__
__Carlos Martinez, Frederico Gonzales and a male juvenile (Gonzales and__
__juvenile not held to answer)__

Days in Jail Awaiting Disposition __185__ OR __N/A__ Bail __N/A__

Referral Date __2/13/80__ P&J Date __3/12/80__ Attorney __Public Defender__

RECOMMENDATION:
Section 707.2 W&I

REPORT SUBMITTED BY:
Vickie Wetherell
Probation Officer I
Adult Division

EXHIBIT, B 2

ARTEMIO MENDEZ ARROYO

**Preface:** The present offense section of this Presentence report was drawn from the Lodi Police Department Crime Report #79-10291; the Dispositional Report - 707b of the Welfare and Institutions Code filed by the San Joaquin County Probation Department on October 9, 1979; and the preliminary examination transcript.

## PRESENT OFFENSE

On September 10, 1979, at approximately 11 p.m., Lodi police officers were dispatched to the 800 block of South Cherokee Lane in Lodi on the report of an injury accident. Upon arrival, officers found the victim, sixteen-year-old Daniel Thomas Martino of Tracy, slumped over the passenger side of the vehicle he had been driving, and his car crashed into a parked car. Victim Martino was pronounced dead on arrival at Lodi Memorial Hospital where it was determined that he had been shot in the head with a shotgun. His passenger, sixteen-year-old Eddie Ramirez, was treated at Lodi Memorial Hospital and was released.

Witnesses on the scene reported the victim's car and another vehicle had been racing southbound on Cherokee, the occupants of each car attempting to hit each other with sticks. After a short distance, a shotgun blast was heard, and immediately after, the victim's vehicle veered across the street to the left, striking a parked car. During the preliminary examination, Eddie Ramirez testified the defendant held the rifle by his shoulder and aimed as the driver leaned forward so the defendant could shoot. He also testified that he and the victim were attempting to leave Lodi when the defendant and his companions commenced pursuit, threw bottles and struck the victim's car with a pipe.

At approximately 12:30 a.m., California Highway Patrol officers observed a vehicle fitting the description of the assailant vehicle. With the assistance of officers of the Stockton Police Department, five suspects were taken into custody at 1443 Sixth Street in Stockton. Arrested were twenty-two-year-old Antonio Lopez Ramirez, 1443 East Sixth Street, Stockton; eighteen-year-old Federico Achua Gonzales, 2529 Tiffany Street, Stockton; nineteen-year-old Bennie Barraza (aka Tito), 2529 Tiffany Street, San Jose; twenty-year-old Jesus Lazaro Hernandez (aka Speedy), 52 North Drive, Roosevelt, Stockton; and Ladie Hernandez (aka Chino), 2317 East Hernandez of 2317 East Roosevelt Street, Stockton. Mrs. Hernandez was released shortly thereafter when it was determined she had not been present at the scene of the crime. Questioning of the suspects in custody led to the arrest of the defendant, Artemio Arroyo, at his residence at 13631 North Hurd Road, #6, Lodi, at approximately 7 a.m., on September 11, 1979.

The defendant was taken to the Lodi Police Department where he was advised of his rights per Miranda. He waived the same and agreed to make a statement. First, the defendant insisted he did not know any of the other

- 2 -

EXHIBIT B 3

ARTEMIO MENDEZ ARROYO

suspects. However, after being advised that his brother had told police
that the defendant had left home with Hernandez, Gonzales, Ramirez and
Barraza on the previous evening, the defendant changed his story and
related the following. He stated that the previous day, September 10,
1979, his brother, Manuel Arroyo (aka Jose Manuel Mendez Arroyo), had
received a telephone call from some Mexican-Americans, reportedly from
the Woodbridge area, stating they were going to do physical harm to
him. Manuel advised the defendant of the situation and asked if they
could get some friends together to meet these people in case of trouble.

The defendant then advised Barraza, Ramirez, Gonzales and Hernandez of
the situation, and they came to Lodi to help. The minor, along with
Barraza, Ramirez, Gonzales and Hernandez, accompanied Manuel to work
that evening at approximately 10 p.m. After Manuel was dropped off,
they proceeded to Blakeley Park in Lodi where they sat and talked. Af-
ter less than an hour, the victim's vehicle drove by, and assuming that
the two Mexican males in the car were the ones who had, perhaps, called
Manuel, they yelled at the car to stop. The car sped off. The group
then pursued the other vehicle with Barraza driving and the defendant
in the passenger seat, while the other three individuals sat in the back-
seat. They soon found the other vehicle on Cherokee Lane and pulled
alongside, attempting to get it to pull over. The car did not do so,
and after a brief period, occupants of both cars started swinging sticks
and pipes at one another. When this did not work, the defendant became
upset and got the shotgun from under the seat of the car and fired the
shotgun at the passenger area of the vehicle. He thought he hit both
subjects in the car. He observed the car veer to the left and crash in-
to a parked vehicle.

Questioning of the rest of the occupants of the vehicle revealed that
the defendant and his companions believed that the defendant had shot
and perhaps killed two people instead of one. The weapon, a .410 shot-
gun, was taken from the residence of the defendant's brother, Manuel.
The defendant was booked into Peterson Juvenile Hall and charged with
a violation of Section 187 of the Penal Code, Murder.

## COLLATERAL INFORMATION

On October 9, 1979, a Dispositional Report - 707b of the Welfare and
Institutions Code was filed with the Superior Court of California,
county of San Joaquin, with the minor being found unfit for Juvenile
Court proceedings on October 23, 1979. On October 24, 1979, a Complaint
was filed in the Municipal Court, Lodi Judicial District, charging the
defendant with a violation of Section 187 of the Penal Code, Murder,
a felony. A Preliminary Examination was conducted, and thereafter an
Information filed charging the defendant as set forth in the Complaint
and alleging the use of a firearm. On February 13, 1980, he pled guilty

- 3 -

EXHIBIT B 4

ARTEMIO MENDEZ ARROYO

to a violation of Section 187 of the Penal Code, in the Second Dgree, Murder, a felony. The enhancement was stricken in the interest of justice and in view of his plea.

Disposition of Involved Parties: Jesus Hernandez pled guilty in Lodi Municipal Court to a violation of Section 245 of the Penal Code, a misdemeanor. He was sentenced to 90 days in the San Joaquin County Jail and received a grant of formal probation.

On November 15, 1979, a charge of a violation of Section 245a of the Penal Code against Frederico Achua Gonzales was dismissed in view of his testimony.

Rojelio Lopez also testified and was not charged in the matter.

On December 10, 1979, Bennie Barraza pled guilty to a violation of Section 32 of the Penal Code, Accessory After the Crime, a felony. On January 7, 1980, the plea was withdrawn and he was referred back to the Lodi Municipal Court for a Preliminary Examination on January 11, 1980. To date, he has not been re-referred to the Probation Department.

The undersigned did not find any record of Carlos Barraza Martinez ever having been referred to the Probation Department.

Indicated Judgment: The Minute Order in this matter dated February 13, 1980, does not reflect an indicated judgment.

Time in Custody:

| Facility | From | To | Total |
|---|---|---|---|
| San Joaquin County Jail | 10-23-79 | 3-12-80 | 142 |
| Peterson Juvenile Hall | 9-11-79 | 10-22-79 | 43 |
| | | | 185 |

DEFENDANT'S VERSION

The defendant was interviewed by the undersigned in the San Joaquin County Jail on February 27, 1980. At that time, he verbally recounted his version of the present offense. For no reason at all, some male subjects who resided in Woodbridge had threatened to kill the defendant's brother, Manuel. During this time of threats, the defendant was detained in the Juvenile Hall on another matter. When he was released, his brother told him about the threats. On the date in ques-

- 4 -

EXHIBIT B 5

ARTEMIO MENDEZ ARROYO

tion, the defendant was repairing his automobile when some friends approached him. Discussion was held relative to the threats made by the Woodbridge subjects to the defendant's brother. At this time, his friends were consuming intoxicants, as was the defendant. A male whom the defendant refers to as "Aliasar" (the preliminary examination reflects an Allazar was in the park with the defendant's brother on the date in question) had a shotgun. Allazar told the defendant the Woodbridge subjects had a shotgun and knives. At Allazar's suggestion, the group went to look for the Woodbridge subjects.

They were all talking and Allazar said he knew where the Woodbridge subjects were. He had been told these Woodbridge subjects were going to "get him" at the cannery. They were going to proceed to the cannery to fight. En route, while in "Chewie's" car, they stopped to purchase liquor. Manuel, Carlos, Jesus, and Bennie bought a large quantity of liquor, and they went to a park. At some point they all exited the vehicle. They saw a car coming, and Allazar said it was the subjects from Woodbridge. These subjects circled the park, and "Chewie" pulled a knife. At this point, the victims left.

Someone said to follow them. At this point, the defendant was in the front seat. Sticks were pulled by individuals in both cars. At one point, the defendant claimed to have been struck in the head by a bottle that bounced off one of the cars. He stated he was extremely "loaded" and thought he was going to throw up.

One of the subjects in the backseat of the vehicle gave the defendant a gun. The defendant stated he did not know the gun was loaded. He stated it was not his intention to kill anybody, but only to fight with them. As the cars proceeded down the road, the defendant was pointing the shotgun at the victim's car. When the cars bumped each other, the shotgun went off. Prior to being handed the shotgun, the defendant denied knowledge it was in the car.

The defendant stated that Roy, Tony, and Frederico are all brothers and stuck together as far as their versions of what had happened.

The defendant related that he felt very remorseful when he learned the victim was from Tracy and not Woodbridge.

The defendant stated he was a member of Vickystown. He stated he is no longer a member and is desirous of having his tattoo removed that indicates he belonged to the gang. (This tattoo is on his arm.) He stated Bennie Barraza's brother, Javier, is now president of the Vickystown.

Because of the defendant's prior gang affiliation, he claimed to have many enemies currently detained with the Department of the Youth Autho-

EXHIBIT B 6

## DISCIPLINARY SHEET

<u>CDC 128A's:</u>

None.

<u>CDC 115's:</u>

| | | |
|---|---|---|
| 9/6/96 | ISP | Conspiracy to Traffic Narcotics (Serious). |
| 12/15/95 | ISP | Conduct/Extortion/Conspiring to Traffic Narcotics (Serious). |
| 6/28/92 | RJD-CF | Possession of Heroin (Serious). |
| 4/7/92 | RJD-CF | Possession/Use of a Controlled Substance (Marijuana) (Serious). |
| 4/7/92 | RJD-CR | Unissued Property (Administrative). |
| 6/16/89 | CTF-C | Performance: On Recreation Yard While on Privilege Loss (Serious). |
| 6/6/89 | CTF-C | Contraband (Administrative). |
| 1/10/89 | CTF-C | Possession of Controlled Substance (Marijuana) Stimulants/ Sedatives (Serious). |
| 10/18/85 | SQ | Contraband: Control of Two Inmate Manufactured Stabbing Instruments (Serious). |
| 6/28/88 | CSP-NF | Work Performance (Serious). |
| 11/10/85 | SQ | Conduct: Obeying Orders, Refusing a Direct Order (Serious). |
| 10/29/84 | DVI | Control of Metal Weapon Stock (Serious). |
| 10/11/81 | SQ | Contraband: Stealing State Property (Administrative). |
| 11/29/80 | SQ | Possession of Money in the Visiting Room (Administrative). |
| 11/25/80 | SQ | Unauthorized Areas (Administrative). |

ARROYO, ARTEMIO          C20149                    CTF                    FEB/2003


EXHIBIT   B 7

COPY

4/19/96

TO: BOARD OF PRISON TERMS

Iam writing to you regarding my fiancee Artemio Arroyo (C20149), he is a prisoner at Ironwood State Prison Blythe CA. serving a term for murder . At the present time he is in AD-SEG and we had plans to be married but were unable to because he is there . We love eachother very much and as soon as were able we'll be married .He has served nearly 16 years and it is my understanding that he might be paroled one day . I am writing to let you know that I will be helping him in every way possible to assimilate back into society . He will be staying witn me and I will be providing for him and assisting him to find a job . He has voiced to me how remorseful he is for the crime he committed 16 years ago . He wants to give something back to the community by doing volunteer work counseling minority youth against the dangers of drugs and gangs ; he wants to tell them his story so he can prevent others from making the same mistakes he made . He has voiced these plans to me many times and I genuinely believe this is what he'll do . I have a stable job , I've been a nurse for over 20 years and I presently work for the County of San Diego as a psychiatric nurse . I live a life style free from drugs and alcohol and Iam a very positive influence for Mr. Arroyo . I wanted you to know he has a strong support system between me and his family we will be incouraging him and guiding him in the right direction . Thankyou for taking the time to read my letter . If you need to contact me I can be reached at 619-287-7701 .



Pauline Lewandowski
5747 Bates St.
Apt. 151 San Diego
CA 92115

Thankyou
Pauline Lewandowski

EXHIBIT  B8

804 and copy of 115 sent to re~~~ds on ~~~~ by ~~~

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT LVM

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| C-20149 | ARROYO, A. | | 10-28-90 (LES) MEPD | ISP | A-2 228L | A95-12-0031 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS CONDUCT, EXTORTION | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 105(a&c) 3016 | CONSPIRACY TO TRAFFIC NARCOTICS | "A" Facility | 12-15-95 | 0900Hrs. |

CIRCUMSTANCES:

On Friday, December 15, 1995, at approximately 0900 hours, an Investigation was concluded identifying Inmate ARROYO, A., C-20149, as the principle person in a conspiracy with your girlfriend, Pauline Garcia(Lewondowski), who worked in concert to commit extortion, to introduce Narcotics into Ironwood State Prison and sell those Narcotics to other Inmates in Facility "A". During the course of the Investigation, information from confidential and reliable informants, which physical evidence, identified you as the person who attempted, through the use of threats of violence to have a person, who visits the Institution, to bring in Narcotics into the Institution for it to be sold to other Inmates. Refer to Confidential Memorandum dated 12-15-95, authored by Correctional Officer P.L. Williams, located in the Confidential Section of Inmate ARROYO's Central File. Inmate ARROYO is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶P.L. Williams, Correctional Officer | 12-15-95 | S&I | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ M. Wellard, Correctional Sergeant | 12-15-95 | DATE 12-18-95 | LOC. A-5 |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | 121-150 "B(6) | 12/9/95 | ▶ M. Wellard | ☐ HO ☑ SHO ☐ SC ☐ FC |

| | COPIES GIVEN INMATE BEFORE HEARING | | | |
|---|---|---|---|---|
| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ R S Batog | DATE 9/0 | TIME 1/19/96 1615 | TITLE OF SUPPLEMENT CDC 115A 1030 |
| ☐ INCIDENT REPORT LOG NUMBER N/A | BY: (STAFF'S SIGNATURE) ▶ N/A | DATE N/A | TIME N/A | BY: (STAFF'S SIGNATURE) ▶ Batog 9/0 DATE 1/19/96 TIME 1618 |

HEARING

Inmate ARROYO was present for the hearing and states his health is good and is prepared to proceed. He was given a copy of the charges and all pertinent reports more than 24 hours prior to the hearing. He was advised that he would be given a copy of the results of the hearing upon final audit by the Chief Disciplinary Officer. He was further advised that a formal notice of his appeal rights and the correct procedures to follow per Departmental Operations Manual, Section 54000 and CCR Title 15, Section 3084.1 may be found on the back of the CDC-115A. NOTE: On 01-19-96 Officer E. Becerril was assigned as Staff Assistant pursuant to Subject request. Officer Becerril pursuant to CCR §3318(b) ensured all due process rights were afforded to Inmate ARROYO and he ARROYO understands and had no objections.

PLEADINGS: Inmate ARROYO pleads NOT GUILTY stating, "Because I did not do this thing. I am trying to get more paper to prove my innocents."

INVESTIGATIVE EMPLOYEE: J. SORIA, Correctional Officer

STAFF/INMATE WITNESSES: Inmate ARROYO requested Correctional Officer(s) Estrada, Arias, Rodrigue Cooper, and Dye to be character witnesses.

FINDINGS: Inmate ARROYO is being found GUILTY of violating CCR §3016 STIMULANTS & SEDATIVES. This evidence includes the Reporting Employee Report, Investigative Employee Report coupled with ☑ CLASSIFICATION ☐ BPT/NAEA Confidential Memorandum, deemed reliable pursuant to §3321.

REFERRED TO ☑ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| W.J. Hill, Correctional Lieutenant | ▶ | 01-19-96 | 1545Hrs |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ Van Gorder, Facility Captain | 1-30-96 | ▶ A. Aragon, W. Complex I | 1/30/96 |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE 2-22-96 | TIME 1115 |
|---|---|---|---|

EXHIBIT

CDC 115 (7/88)

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| C-20149 | ARROYO, A. | 3005(a&c) 3016 | 12-15-95 | ISP | A95-12-0031 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT    [X] YES    [ ] NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| [ ] I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| [ ] I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | | |
|---|---|---|---|
| | | INMATE'S SIGNATURE | DATE |
| [ ] I REVOKE my request for postponement. | | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT [ ] REQUESTED    [ ] WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| [ ] ASSIGNED | DATE | NAME OF STAFF |
| [ ] NOT ASSIGNED | REASON | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE [ ] REQUESTED    [ ] WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| [ ] ASSIGNED | DATE | NAME OF STAFF |
| [ ] NOT ASSIGNED | REASON | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
[ ] REPORTING EMPLOYEE    [ ] STAFF ASSISTANT    [ ] INVESTIGATIVE EMPLOYEE    [ ] OTHER _____    [ ] NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | [ ] | [ ] | | [ ] | [ ] |
| | [ ] | [ ] | | [ ] | [ ] |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

On Sunday, December 24, 1995, I informed Inmate ARROYO, A. that I have been assigned as his Investigative Employee for the above stated CDC 115. Inmate ARROYO, A. had no objections.

INMATE ARROYO, A. C-20149: Inmate ARROYO, A. Stated, "Contact Pauline Garcia and ask about what I'm accused of. She will tell you it's not true what I'm accused of. I am a lifer. I have been on A-Yard doing my program. I was close to completing a trade with Mr. White in Sewing Machine Repair. Your informants are not telling the truth, they must have something against me or my family. I was attending AA Meetings on Thursday nights.

REPORTING EMPLOYEE'S STATEMENT: Officer Soria, J. Stated, "I have nothing else to add to this report." Officer Soria, J. acted as an interpreter at this hearing due to Inmate ARROYO, A. being none speaking English.

STAFF WITNESSES STATEMENTS: Inmate ARROYO, A. requested that Officer's Estrada, Arias, Rodrigues, Cooper, and Dye be character witnesses.

INMATE WITNESSES STATEMENT: Not applicable.

REPORTING EMPLOYEE REQUESTED AT HEARING: Not requested.

INVESTIGATIVE EMPLOYEE REQUESTED AT HEARING: Not requested.

ADDITIONAL INFORMATION CONTAINED IN CONFIDENTIAL REPORTS: YES. CONFIDENTIAL SOURCE (1030)

| | INVESTIGATOR'S SIGNATURE ▶ | DATE 12-26-95 |
|---|---|---|
| [X] COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE 11-11-9- |

CDC 115-A (7/88)          — If additional space is required use supplemental pages

EXHIBIT

B10

IRONWOOD STATE PRISON
INMATE APPEALS OFFICE

APPEALS MODIFICATION ORDER

| TO: | A.ARAGON ,ASSOC .WARDEN | DATE: | 7/24/96 |
| INMATE: | ARROYO | NUMBER: | C20149 |
| APPEAL LOG: | ISP-A-96-00381 | OTHER: | |
| LOGGED IN: | 5/20/96 | DUE DATE: | |

The inmate appeal listed above has been **Partially Granted**. Please review the attached appeal response and take the necessary action to comply by the due date shown above.

SPECIFIC ACTION REQUIRED:

CDC-115 Log #A-95-12-0031 is ordered reheard, due to loss of time constraints, credit loss for this Rule Violation Report is DISALLOWED.

Upon completion, please make the appropriate notation at the bottom of this form and return it to the Inmate Appeals Office so it may be recorded and the file closed on this appeal.

APPEALS COORDINATOR
INMATE APPEALS OFFICE

# INMATE COPY

DATE OF ACTION: _____

ACTION TAKEN: _____

_____

_____

_____

PERSON TAKING THE ACTION: _____

SIGNATURE: _____ TITLE: EXHIBIT *B* 11

D 7

State of California                                                                          Department of Corrections
                                                                                             Ironwood State Prison

# Memorandum

Date    :    May 20, 1996

To      :    INMATE  ARROYO       CDC# C-20149
             HOUSING  UNIT    A5-216U

Subject:     SECOND LEVEL RESPONSE APPEAL LOG# ISP-A-96-00381

### SUMMARY OF APPEAL

In your appeal, you allege that your Due Process had been violated by the fact that Lt. Hill had
placed you in Ad-Seg by signing the CDC-114D and he was also the person who adjudicated
your CDC-115. You are also alleging that time constraints were not met, your request for staff
to be interviewed were not met, your request for staff to be interviewed were not addressed,
and that your requested I.E. and Reporting Employee were not present at the hearing.

### SUMMARY OF IVESTIGATION

Summary of the investigation revealed that there was a violation in the procedures for
adjudicating your CDC-115. It appears that the SHO did not address your denial of Staff or
witnesses. Lt. Hill's endorsing of CDC-114D Ad-seg Placement Order was made solely in the
functionary capacity as the Facility "A" Lieutenant. Lt. Hill had no roll in the investigation that
preceded your CDC-115, nor was he the investigator that prompted the CDC Formal 114D.
Lt. Hill was, therefore, a disinterested party.

Based upon this investigation, your CDC-115, Log # A-95-12-0031, will be reheard and so that
all appropriate time constraints and administrative procedures be met.

### APPEAL RESPONSE

For the reason(s) cited above your appeal is **PARTIALLY GRANTED** at the Second Level.
**Your Rule Violation Report is ordered re-heard.**


R. L. COUVILLION                                        For  D. K. BUTLER
Inmate Appeals Coordinator                                   Chief Deputy Warden

EXHIBIT B 12

96 00381.DOC
CDC 1617 (3/89)

STATE OF CALIFORNIA
# RULES VIOLATION REPORT
DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| C-20149 | ARROYO, A. | | 10/28/90 MEPD | ISP | A2-228L | A96-09-00 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3016 | CONSPIRACY TO TRAFFIC NARCOTICS | "A" FACILITY | 9/6/96 | 0900Hrs. |

CIRCUMSTANCES

On Firday, December 15, 1995, at approximently 0900hours, an investigation was concluded indetifying Inmate ARROYO, A. C-20149, as the principle person in a conspiracy with your girlfriend, Pauline Garcia (Lewondowski), who worked in concert to commit extortion, to introduce Narcotics into Ironwood State Prision, and sell those Narcotics to other Inmates in Facility "A". During the course of the investigation, information from confidential and reliable informants, physical evidence, indentified you as the person who attempted, through the use of threats of violence to have a person, who visits the institution, to bring in Narcotics into the institution for it to be sold to other Inmates. Refer to Confidential Memorandum dated 12/15/1995, authored by Correctioanl Officer P.L. Williams, located in the Confidential Section of Inmate ARROYO'S Central File. Inmate ARROYO is aware of this report.

   **THIS RVR WAS ORDERED REISSUED BY ISP MOD. ORDER ISP-A-96-00381**

| REPORTING EMPLOYEE | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| P.L. WILLIAMS, Correctional OFicer | 9/9/96 | S&I | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| M. Wellard Correctional Sergeant | 9-9-96 | 12/18/95 | LOC. A-5 |

| CLASSIFIED | OFFENSE DIVISION | DATE | CLASSIFIED BY | HEARING REFERRED TO |
|---|---|---|---|---|
| X SERIOUS 121-150 | B-6 | 9-9-96 | W.R.Crum #774 | SHO |

COPIES GIVEN INMATE BEFORE HEARING

EXHIBIT B 13

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S) | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| C-20149 | ARROYO, A. | 3016 | 9/6/96 | ISP | A96-09-0014 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT  ☐ YES  ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I REVOKE my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED  ☐ WAIVED BY INMATE | ▶ | |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| ☐ NOT ASSIGNED | REASON | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED  ☐ WAIVED BY INMATE | ▶ | |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| ☐ NOT ASSIGNED | REASON | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE  ☐ STAFF ASSISTANT  ☐ INVESTIGATIVE EMPLOYEE  ☐ OTHER _____  ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

EXHIBIT B 14

| INVESTIGATOR'S SIGNATURE | DATE |
|---|---|
| ▶ | |

| BY: (STAFF'S SIGNATURE) | TIME | DATE |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

Old Log# A95-12-0031

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| C-20149 | ARROYO | | | I.S.P. | AFB2-228L | A96-08-00 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3016 STIMULANTS & SEDATIVES | CONDUCT/EXTORTION/CONSPIRACY TO TRAFFIC NARCOTICS | "A" FACILITY | 12-15-95 | 0900 HOUR |

CIRCUMSTANCES

This Disciplinary is being ordered to be re-issued and re-heard (04-04-96) as witnesses were excluded at the hearing per Mr. A. Aragon., A.W.  Complex-12
On Friday, December 15, 1995, at approximately 0900 hours, a Investigation was concluded identify Inmate ARROYO, C-20149, as the principle person in a conspiracy with your girlfriend, Pauline Garcia (Lewondowski), who worked in concert to commit extortion, to introduce Narcotics into Ironwood State Prison and sell those narcotics to other Inmates in Facility "A".  During the cour of the Investigation, information from confidential and reliable informants, with physical evi-dence, identified you as the person who attempted, through the use of threats of violence to have a person, who visits the Institution, to bring in narcotics into the Institution for it to be sol to other inmates.  Refer to confidential memorandum dated 12-15-95, authored by Correctional Officer P.L. Williams, located in the Confidential Section of Inmate ARROYO'S Central File.  Inma ARROYO is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ P.L. Williams., Correctional Officer | 12-15-95 | S&I | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ M. Wellard., Correctional Sergeant | | DATE  N/A | LOC.  N/A |

| CLASSIFIED<br>☐ ADMINISTRATIVE<br>☒ SERIOUS | OFFENSE DIVISION:  "B" | DATE | CLASSIFIED BY (Typed Name and Signature)<br>▶ A. Gallardo, Lieutenant | HEARING REFERRED TO<br>☐ HO  ☒ SHO  ☐ SC  ☐ FC |
|---|---|---|---|---|

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|

| ☐ INCIDENT REPORT<br>LOG NUMBER:<br>N/A | BY: (STAFF'S SIGNATURE) ▶  N/A | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |
|---|---|---|---|---|---|---|

HEARING

*B 15*

REFERRED TO  ☐ CLASSIFICATION  ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|

| REVIEWED BY: (SIGNATURE)<br>▶ R. Van Gorder., Fac."A" Captain | CHIEF DISCIPLINARY OFFICER'S SIGNATURE<br>▶ A. Aragon., A.W.  Complex-1 | DATE | |
|---|---|---|---|

| | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |
|---|---|---|---|
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | | |

CDC 115 (7/88)

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
## SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). STIMULANTS | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| C-20149 | ARROYO | 3016  & SEDATIVES | 12-15-95 | I.S.P. | A96-08-0001 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

### POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | N/A |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | N/A |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | N/A |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I REVOKE my request for postponement. | ▶ N/A | N/A |

### STAFF ASSISTANT

| STAFF ASSISTANT ☐ REQUESTED  ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ N/A | DATE N/A |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| | | N/A |

| ☐ NOT ASSIGNED | REASON  Does not meet criteria per CCR 3315 (d)(2). |
|---|---|

### INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE ☒ REQUESTED  ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|

| ☐ NOT ASSIGNED | REASON |
|---|---|

EVIDENCE/INFORMATION REQUESTED BY INMATE:

### WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE  ☐ STAFF ASSISTANT  ☐ INVESTIGATIVE EMPLOYEE  ☐ OTHER _____  ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

EXHIBIT B16

| | INVESTIGATOR'S SIGNATURE ▶ | DATE |
|---|---|---|

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |
|---|---|---|---|

CDC 115-A (7/88)                    — If additional space is required use supplemental pages —                    88-86095

| | | | | Old Log# A95-12-0031 | |
|---|---|---|---|---|---|

| -20149 | ARROYO | | | RELEASE/ASSIGNED DATE | INST. I.S.P. | HOUSING NO. AFB2-228L | LOG NO. A96-08- |
|---|---|---|---|---|---|---|---|

| VIOLATED RULE NO(S). 3016 STIMLANTS & SEDATIVES | SPECIFIC ACTS CONDUCT/EXTORTION/CONSPIRACY TO TRAFFIC NARCOTICS | LWOP | LOCATION "A" FACILITY | DATE 12-15-95 | TIME 0900 HO |
|---|---|---|---|---|---|

CIRCUMSTANCES

This Disciplinary is being ordered to be re-issued and re-heard (04-04-96) as witnesses were excluded at the hearing per Mr. A. Aragon.,A.W. Complex-1.
On Friday, December 15, 1995, at approximately 0900 hours, a Investigation was concluded identi Inmate ARROYO, C-20149, as the principle person in a conspiracy with your girlfriend, Paulina Garcia (Lewondowski), who worked in concert to commit extortion, to introduce Narcotics into Ironwood State Prison and sell those narcotics to other Inmates in Facility "A". During the co of the Investigation, information from confidential and reliable informants, with physical evi dence, identified you as the person who attempted, through the use of threats of violence to ha a person, who visits the Institution, to bring in narcotics into the Institution for it to be s to other inmates. Refer to confidential memorandum dated 12-15-95, authored by Correctional Officer P.L. Williams, located in the Confidential Section of Inmate ARROYO'S Central File. In ARROYO is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) ▶ P.L. Williams., Correctional Officer | DATE 12-15-95 | ASSIGNMENT S&I | RDO'S S/S/H |
|---|---|---|---|

| REVIEWING SUPERVISOR'S SIGNATURE ▶ M. Wellard., Correctional Sergeant | DATE 8-7-96 | ☐ INMATE SEGREGATED PENDING HEARING DATE N/A | LOC. N/A |
|---|---|---|---|

| CLASSIFIED ☐ ADMINISTRATIVE ☒ SERIOUS | OFFENSE DIVISION: 121-150 "B" | DATE 8-7-96 | CLASSIFIED BY (Typed Name and Signature) A. Gallardo, Lieutenant | HEARING REFERRED TO ☐ HO ☒ SHO ☐ SC ☐ F |
|---|---|---|---|---|

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE 9-6-96 | TIME 1231 | TITLE OF SUPPLEMENT MOD ORDER |
|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER N/A | BY: (STAFF'S SIGNATURE) ▶ N/A | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE 9-6-96 | TIME 1231 |

HEARING  Inmate ARROYO stated he was in good health and ready to proceed with the hearing. All written reports to be used as evidence have been issued to the inmate charged in this matter. OT been met and credit loss is disallowed per Modification Order #96-284. Confidential infor- ation used in this hearing has been reviewed by the SHO. Two (2) disclosure statements, CDC-1030's, were issued to subject on 12/15/95 and 12/17/95. The SHO has found both the con- fidential information and the CDC-1030's meet all established criteria per 3321(a) and (c) the confidentiality and reliability. Officer Moore was assigned as the I.E. and subject receiva a copy of the I.E. Report on 9/12/96.
WITNESSES:  Subject requested the following witnesses: Officers Estrada, Arias, Rodriguez, Cooper and Dye.  SHO requested the following witnesses: Officers Estrada, Arias, Rodriguez, Cooper and Dye.  The following witnesses were denied: C/O's Estrada and Rodriguez because of unavailability due to Transfer/Vacation.  C/O Cooper because witness's statement is in the report and there is no showing of any additional evidence or relevant testimony to be derived.
the charge was read to subject who stated he understood and pled NOT GUILTY.  Subject stated:
continued on CDC-115-C

| FERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA | | | |
|---|---|---|---|
| TION BY (TYPED NAME) T.A. Boyll, Lieutenant | SIGNATURE ▶ | DATE | TIME |
| REVIEWED BY (SIGNATURE) | DATE 10-24-9 | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ W. Edwards, A.W, G.P. | DATE 10-25-96 |
| PY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

15 (7 88)

EXHIBIT B.7

00556-0000

| | LOG NUMBER | | | |
|---|---|---|---|---|
| | D/96-09-0006 | | | |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER |

"What they are accusing me of is not true. I was getting married and going
to the board. I don't know why anybody would make those statements about me."
WITNESS STATEMENTS: None of the staff witnesses could recall anything at all
about inmate ARROYO.

FINDINGS: Subject is found GUILTY of Trafficking in Narcotics. The preponderance
of the evidence considered during the hearing substantiates the finding. This
evidence includes: The contents of the written reports which clearly support
the finding. The credibility of the evidence provided in subject's defense
does not outweigh evidence presented in the charge against him. Additional
factors considered were: The confidential information from two sources is com-
pelling. Subject failed to provide any relevant evidence which could refute
or mitigate the charge and evidence presented against him.
DISPSITION: No credit loss due to failure to meet time constraints. Counseled
and reprimanded.

REFER TO: Chief Disciplinary Officer for confirmation of disposition.
REFER TO: UCC for Pre BFT hearing scheduled for 1/97.
ADVISEMENT: Subject is advised he will receive a copy of this completed report
upon final review and audit by the Chief Disciplinary Officer. He was also
advised that he may appeal any portion of the hearing or the findings of the
Senior Hearing Officer. He was further advised that he must attach the final
copy of the 115 to the appeal and submit it for second level review and action.

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC-115-C GIVEN TO INMATE | T.K. Boyll, Lieutenant | | |
| | GIVEN BY: ((Staff's Signature) | DATE SIGNED 10-29-96 | TIME SIGNED |

CDC-115-C (5/95)

EXHIBIT B 18

# SERIOUS RULES VIOLATION REPORT

07-205

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). STIMULANTS | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| C-20149 | ARROYO | 3016 & SEDATIVES | 12-15-95 | I.S.P. | A96-08-0001 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT    ☐ YES    ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | N/A |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | N/A |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | N/A |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I REVOKE my request for postponement. | ▶ N/A | N/A |

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED   ☐ WAIVED BY INMATE | ▶ N/A | N/A |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| | | N/A |

| ☐ NOT ASSIGNED | REASON |
|---|---|
| | Does not meet criteria per CCR 3315 (d)(2). |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ REQUESTED   ☐ WAIVED BY INMATE | ▶ | |

| ☒ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| | | |

| ☐ NOT ASSIGNED | REASON |
|---|---|
| | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER ___   ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

    This investigation was initially assigned to Correctional Officer Moore, RDO's F/S, on 9-10-96. As the initial investigator I advised ARROYO that the would have an opportunity to present his case before a Senior Hearing Officer, and that the role of the Investigative Employee was to gather facts and clarify issues of the alleged violation for the Senior Hearing Officer. ARROYO was further advised that pursuant to C.C.R. #3315(D)(1), he had the right to object to the assignment of the initial Investigative Employee. ARROYO stated that he did not have an objection.

    On 9-10-96, I questioned inmate ARROYO regarding the circumstances surrounding the alleged violation; he stated: I had served 4 years without any write ups, I had a job and was programing. I was close to getting a date for release. Then out of the blue I received this 115 alleging that I was involved in these activities. I did not do these things I'm accused of, and being placed in this position has ruined my marriage chances until I'm released from AD-SEG.

    See attached statements from Pauline Lewandowski, inmate ARROYO's fiancee!

    On 9-10-96, I questioned P.L. Williams, the reporting employee, regarding the charged rule violation and she stated: Confidential information from informants which identified ARROYO as having threatened physical violence in order to introduce drugs into the institution was clear and understandable. This information served as the basis for the 115 and investigation into the reliability of the information was shown to be credible.

1-12-96  0735 hrs

**EXHIBIT B 19**

| | INVESTIGATOR'S SIGNATURE | DATE |
|---|---|---|
| | ▶ Moore Correctional Officer | 9-10-96 |

| ☒ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) | TIME | DATE |
|---|---|---|---|
| | ▶ | | |

CDC 115-A (7/88)      *— If additional space is required use supplemental pages —*      88 86095

*EXHIBIT*

STATE OF CALIFORNIA
CDC 1030 (12/86)

H.

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _C 20149_    INMATE NAME: _Arroyo, A._

1)  Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a)  CDC-115, Disciplinary Report dated _12-15-95_ _____ submitted by

   _C/o P Williams_
   STAFF NAME, TITLE

   b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _12/15/95_ _B_

2)  Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a)  ☐  This source has previously provided confidential information which has proven to be true.

   b)  ☐  This source participated in and successfully completed a Polygraph examination.

   c)  ☒  More than one source independently provided the same information.

   d)  ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e)  ☒  Part of the information provided by the source(s) has already proven to be true.

   f)  ☐  Other (EXPLAIN) _____

3)  Disclosure of information received.

   The information received indicated the following: _That you are a principle in a group of individuals who conspired to extort an individual to bring Narcotic into ISP. Also, conspired to introduce Narcotic into ISP and sell them to to other inmates on Facility "A"_

   (If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _Refer to confidential memo dated 12-15-95 by c/o L Williams_

   _C/o L Williams_
   STAFF SIGNATURE, TITLE

   *EXHIBIT* B 2C

   _12-15-95_
   DATE DISCLOSED

DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: _____ C-20149 _____    INMATE NAME: _____ ARROYO, ARTEMIO _____

1)  Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a)  CDC-115, Disciplinary Report dated _____ 12-18-95 _____ submitted by

CORRECTIONAL OFFICER    P.L. WILLIAMS
_____
STAFF NAME, TITLE

b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____ 12-15-95 _____

2)  Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a)  ☑  This source has previously provided confidential information which has proven to be true.

b)  ☐  This source participated in and successfully completed a Polygraph examination.

c)  ☑  More than one source independently provided the same information.

d)  ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)  ☑  Part of the information provided by the source(s) has already proven to be true.

f)  ☐  Other (EXPLAIN) _____

_____

3)  Disclosure of information received.

The information received indicated the following: _____ That you are a principle person in a group of

individuals who conspired to extort an individual to bring narcotics into Ironwood State

Prison. Also, conspired to introduce narcotics into Ironwood State Prison and sell them to other

inmates on "A" Facility.

EXHIBIT B 21

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder). _____ Refer to Confidential Memorandum dated 12-15-95, authored by Correctional Officer

P.L. Williams, located in the Confidential Section of Arroyo's Central File.

_____ William _____                                    12/19/95
_____    _____
STAFF SIGNATURE, TITLE                                DATE DISCLOSED

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: C-20149 _____     INMATE NAME: Arroyo, Artemio _____

1)  Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a)  CDC-115, Disciplinary Report dated __Friday, December 12, 1995_____ submitted by

_____Correctional Officer P.L. Williams_____
                                          STAFF NAME, TITLE

b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated __12-15-95__

2)  Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a)  ☒  This source has previously provided confidential information which has proven to be true.

b)  ☐  This source participated in and successfully completed a Polygraph examination.

c)  ☒  More than one source independently provided the same information.

d)  ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)  ☒  Part of the information provided by the source(s) has already proven to be true.

f)  ☐  Other (EXPLAIN) _____

_____

3)  Disclosure of information received.

The information received indicated the following: __Implicates inmate Arroyo in smuggling,__
__trafficking, and selling narcotics at Ironwood State Prison._____

_____

_____

_____

_____

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). __Confidential memos dated 12-15-95, located in the confidential section__
__of the Central File.__

**EXHIBIT** *B-22*

_____        _____
STAFF SIGNATURE, TITLE              DATE DISCLOSED

DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

87 82069